# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF GEORGIA
### VALDOSTA DIVISION

IN RE:                           :

                                     :

PERFECTLY PRISCILLA, LLC,     :           Chapter 11 Case No. 23-70575-JTL

                                     :

          Debtor.             :

_____:

## SUBCHAPTER V PLAN OF REORGANIZATION OF DEBTOR
## PERFECTLY PRISCILLA, LLC

**September 6, 2023**

*Presented by:*

G. Daniel Taylor
Georgia Bar No. 528521

R. Braden Copeland
Georgia Bar No. 821153

Stone & Baxter, LLP
577 Third Street
Macon, Georgia 31201
(478) 750-9898; (478) 750-9899 (fax)
dtaylor@stoneandbaxter.com
bcopeland@stoneandbaxter.com

*Counsel to Debtor*

# NOTICE

THIS IS THE ONLY DOCUMENT AUTHORIZED BY THE COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF CONSENT TO OR ACCEPTANCE OF THIS SUBCHAPTER V PLAN OF REORGANIZATION OF DEBTOR PERFECTLY PRISCILLA, LLC (AS IT MAY BE AMENDED, THE "**PLAN**"). NO REPRESENTATIONS HAVE BEEN AUTHORIZED BY THE COURT CONCERNING THE DEBTOR OR THE PLAN EXCEPT AS SET FORTH IN THIS PLAN.

ALL HOLDERS OF CLAIMS ARE ENCOURAGED TO REVIEW THE FULL TEXT OF THIS PLAN AND READ CAREFULLY ITS TERMS AND CONDITIONS BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT IT.

THE STATEMENTS CONTAINED IN THIS PLAN ARE MADE AS OF THE DATE HEREOF, EXCEPT TO THE EXTENT THAT AN EARLIER DATE IS SPECIFIED WITH RESPECT TO ANY INFORMATION. THE DELIVERY OF THIS PLAN DOES NOT IMPLY THAT THE INFORMATION CONTAINED IN IT IS CORRECT AT ANY TIME AFTER SEPTEMBER 6, 2023.

NO ENTITY SHOULD CONSTRUE THE CONTENTS OF THIS PLAN AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. EACH ENTITY SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, OR TAX ADVISORS AS TO ANY SUCH MATTERS.

AS TO ANY CONTESTED MATTERS, ADVERSARY PROCEEDINGS, OTHER CLAIMS, ACTIONS, OR THREATENED ACTIONS INVOLVING THE DEBTOR OR ITS CREDITORS THAT EXIST, OR MAY BE MADE OR INITIATED IN THE FUTURE, THIS PLAN WILL NOT CONSTITUTE, NOR SHALL IT BE CONSTRUED AS, AN ADMISSION OF ANY FACT, LIABILITY, STIPULATION, OR WAIVER. INSTEAD, ANY MATERIAL IN THIS PLAN WILL BE TREATED AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS AND SHALL NOT BE ADMISSIBLE IN FURTHER PROCEEDINGS.

ANY APPROVAL BY THE BANKRUPTCY COURT OF THIS PLAN DOES NOT CONSTITUTE A FINDING BY THE COURT THAT THE REPRESENTATIONS CONTAINED IN THE PLAN ARE FACTUAL; NOR DOES ANY SUCH APPROVAL CONSTITUTE AN ENDORSEMENT OF ANY OF THE REPRESENTATIONS CONTAINED IN THIS PLAN. THE PLAN WILL NOT BE BINDING ON CREDITORS UNLESS IT IS CONFIRMED BY THE BANKRUPTCY COURT AT THE CONFIRMATION HEARING.

*[Continued on Next Page]*

## I. INTRODUCTION

On June 9, 2023, Perfectly Priscilla, LLC ("**PPL**" or "**Debtor**") filed the above-styled Chapter 11 bankruptcy case (the "**Bankruptcy Case**"). The Bankruptcy Case remains pending in the United States Bankruptcy Court for the Middle District of Georgia, Valdosta Division (the "**Bankruptcy Court**"). Pursuant to applicable provisions of and Rules related to the Bankruptcy Code, including, without limitation, Sections 1189, 1190, and 1191 of the Bankruptcy Code, the Debtor proposes this Subchapter V Plan of Reorganization dated September 7, 2023 (the "**Plan**") to facilitate its reorganization and to pay Allowed Claims as more particularly described below.

### Summary of the Plan

The purpose of this Plan is to set forth information that (i) outlines the history of the Debtor's business and the reasons that the Debtor was forced to file this Chapter 11 Case, (ii) sets out the terms and conditions of the Plan, and (iii) assists each holder of any Claim against, or Equity Interest in, the Debtor that is entitled to vote for acceptance or rejection of the Plan, to make an informed decision of whether to vote to accept or reject the Plan.

### Summary Chart of Proposed Claim Treatment

This Plan provides for the repayment of Allowed Claims as described herein. Such repayment will occur, primarily, from the Debtor's business income and, if proposed herein, the sale or other disposition of the Debtor's assets. The treatment of claims proposed under the Plan is summarized in the following chart:

| Class | Impairment | Treatment |
|---|---|---|
| **Unclassified Claims** (including Administrative Fee Claims, Statutory Fees, and General Administrative Claims) | Unimpaired | Certain Claims may not be classified under Chapter 11 plans, including Claims entitled to Administrative Expense status, Subchapter V Trustee fees, and court costs. The Plan provides for payment of Unclassified Claims by the later of (i) the Effective Date; (ii) the date on which such Claim becomes an Allowed Administrative Claim; (iii) or, the date shown within the Budget, unless otherwise agreed by the Holder of an unclassified claim. Claims entitled to priority status under 11 U.S.C. § 507(a)(8) (certain tax claims), if any, shall be paid in a manner authorized under 11 U.S.C. § 1129(a)(9)(C) and (D), within the times specified in this Plan. **Please see Section III, "The** |

| | | |
|---|---|---|
| | | **Plan – Unclassified Claims,"** *infra*, **for further details.** |
| **Class 1** – Non-Tax Priority Claims against Debtor. | N/A | There are no known Claims in this Class. If such Claims are Allowed by the Bankruptcy Court, then, except to the extent that the Holder of an Allowed Class 1 Claim agrees to other, lesser treatment, any Holder of an Allowed Class 1 Claim shall be paid in full in 60 equal monthly installments, to begin on the 5th day of the month following the allowance of such claim. |
| **Class 2** – Allowed Secured Claim of Shopify Capital, Inc. (as alleged in Proof of Claim 13) | Impaired | Class 2 includes the Allowed Secured Claim of Shopify Capital, Inc. ("**Shopify**") (the "**Class 2 Allowed Secured Claim**"), with such claim alleged to be **$162,659.00** in total. It is allegedly secured by, among other things, all of Debtor's equipment and inventory. The Class 2 Allowed Secured Claim, together with interest in the amount of 3.0% per annum, shall be paid in full as follows: the Reorganized Debtor shall pay the Class 2 Allowed Secured Claim, together with interest in the amount of 3% per annum, over 72 months, with each monthly payment in the amount of **$2,515.29**. Each monthly payment shall be payable in two installments of $1,257.65 due on the 7th and 21st of each month, commencing on the 7th day of the month following the Effective Date, with a like payment of $1,215.65 due on the 7th and 21st day of each month thereafter until the Allowed Secured Claim is paid in full. No provision of the Plan shall impair any credit bid right of the Holder of the Class 2 Allowed Secured Claim. The Reorganized Debtor's obligations |

| | | |
|---|---|---|
| | | under Class 2 may be pre-paid in whole or part at any time, without penalty. Any Allowed Deficiency Claim of the Holder of the Class 2 Allowed Secured Claim shall be paid in Class 4. The Holder shall retain all liens, if any, securing the Claim until the Claim is paid in full or otherwise satisfied; provided, however, that, except as otherwise provided in the Plan, Confirmation will void, pursuant to 11 U.S.C. § 506(d), all liens in excess of the Allowed Secured Claim, if any, in this Class. |
| **Class 3** – Allowed Secured Claim of the Small Business Administration | Impaired | Class 3 includes the Allowed Secured Claim of the Small Business Administration (the "**SBA**") (the "**Class 3 Allowed Secured Claim**"), with such claim estimated by the Debtor to be **$171,238.09** under 11 U.S.C. § 506(a) as of the Effective Date. It is allegedly secured by a security interest in all tangible and intangible personal property of the Debtor. The Class 3 Allowed Secured Claim shall be paid in full as follows: the Reorganized Debtor shall pay the Class 3 Allowed Secured Claim, together with interest in the amount of 3.75% per annum, in 360 equal monthly installments of **$867.64** commencing on 15th day of the month following the Effective Date, with a like payment on the 15th day of each month thereafter until the Allowed Secured Claim is paid in full. No provision of the Plan shall impair any credit bid right of the Holder of the Class 3 Allowed Secured Claim. The Reorganized Debtor's obligations under Class 3 may be pre-paid in whole or part at any time, without penalty. Any Allowed Deficiency Claim of the Holder of the Class 3 |

| | | |
|---|---|---|
| | | Allowed Secured Claim shall be paid in Class 4. The Holder shall retain all liens, if any, securing the Claim until the Claim is paid in full or otherwise satisfied; provided, however, that, except as otherwise provided in the Plan, Confirmation will void, pursuant to 11 U.S.C. § 506(d), all liens in excess of the Allowed Secured Claim, if any, in this Class. |
| Class 4 - Allowed Unsured Claims (including Deficiency Claims and Rejection Claims, if any) | Impaired | The Allowed Unsecured Claims in Class 4 (each a "**Class 4 Allowed Unsecured Claim**"), which include Allowed Deficiency Claims and Allowed Rejection Claims (if any), shall be paid as follows: the Reorganized Debtor shall pay the Holders of Class 4 Allowed Unsecured Claims their Pro Rata Share of the Class 4 Total Distribution (as projected on the Budget) based on each such Holder's Class 4 Allowed Unsecured Claim compared to the total of all Class 4 Allowed Unsecured Claims. The Reorganized Debtor shall pay such Class 4 Total Distribution in three (3) or less annual installments of varying amounts (as shown on the Budget) (or as otherwise ordered by the Court) commencing within sixty (60) days after the first anniversary of the Effective Date, with each subsequent annual installment being made within sixty (60) days after each subsequent anniversary of the Effective Date. The Reorganized Debtor's obligations under Class 4 to make the Class 4 Total Distribution can be satisfied at any time, with any payment of the Class 4 Total Distribution, at whatever time that is on or before the dates required under the Plan, not resulting in a penalty, including, without limitation, a pre- |

| | | |
|---|---|---|
| | | payment penalty. Such Class 4 Total Distribution, when paid in full, shall be in full satisfaction of the Reorganized Debtor's obligations under and Allowed Unsecured Claims allowed in Class 4. Notwithstanding anything else in the Plan to the contrary, any Allowed Unsecured Claim in Class 4 shall be reduced by any payment received by the creditor holding such Claim from any third party or other obligor and the Reorganized Debtor's obligations hereunder shall be reduced accordingly. |
| **Class 5** – Equity Interest Holders of Debtor. | Impaired | Mr. Thomas Thompson and Ms. Deidre Thompson shall retain their Interests in the Reorganized Debtor and all associated rights, subject, however, to the provisions of the Plan. |

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THE PLAN CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY, IF YOU HAVE ONE. (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.)**

**<u>Defined Terms, Computation of Time, and Rules of Construction</u>**

1. **Defined Terms**

As used in the Plan, capitalized terms have the meanings set forth on **<u>Schedule 1</u>** included with this Plan. Any term that is not otherwise defined in the Plan, but that is used in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

2. **Accounting Terms**

Accounting terms which are not otherwise defined in this Plan have the meanings given to them under the Bankruptcy Code, the IRC, the Uniform Commercial Code, or GAAP, in that descending order of priority. If the definition of an accounting term that is defined in this Plan is inconsistent with the meaning of such term under GAAP, then the definition set forth in this Plan will control.

### 3. Construction

Unless the context of this Plan otherwise clearly requires: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) references to any gender include the other genders, (c) the words "include," "includes," and "including" do not limit the preceding terms or words and shall be deemed to be followed by the words "without limitation," (d) the term "or" has the inclusive meaning represented by the phrase "and/or," (e) the terms "hereof," "herein," "hereunder," "hereto," and similar terms in this Plan refer to this Plan as a whole and not to any particular provision of this Plan; (f) the terms "day" and "days" mean and refer to calendar day(s); (g) the terms "year" and "years" mean and refer to calendar year(s); (h) any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to the Plan; (i) any reference to any Entity as a Holder of a Claim includes that Entity's successors, assigns, and affiliates; (j) all references in the Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to the Plan; (k) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; and (l) subject to the provisions of any contract, articles of incorporation, code of regulations, similar constituent documents, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules. The rules of construction set forth in Section 102 of the Bankruptcy Code will apply.

### 4. Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

## II. BACKGROUND

### Overview of the Debtor

The Debtor, Perfectly Priscilla, LLC, is owned by Thomas and Deidre Thompson. Mr. Thompson is responsible for the day-to-day operations and management of the Debtor. PPL is a an online women's clothing boutique that is based on Valdosta, Georgia. The company was founded by Mr. and Ms. Thompson in 2014. For the purposes of maintaining the inventory that the company sells online, the company leases a small warehouse in Valdosta, Georgia.

### Events Leading to the Bankruptcy Filings

The Debtor's cases arose primarily out of the financial difficulties it faced following the COVID pandemic. During the pandemic, as people were confined to their homes and resorted to shopping online, PPL's sales rapidly accelerated. PPL responded to the sudden increase in demand and shopping activity by increasing its marketing and advertising spend, and its investment in maintaining larger inventories. Then, as the severity of the pandemic lessened, the pandemic-related online shopping activity began to decelerate, almost as rapidly and

unexpectedly as it had accelerated. As a result, PPL's sales slowed to the point where inventories marketing, advertising, and other significant expenses began to outpace revenue, and inventories began to accumulate. That combination strained cash flow to the point where the company's net income was not able to service its debt load. The Debtor was eventually forced to file this case in order to reorganize its financial affairs.

The case was filed on June 9, 2023 under Subchapter V of the Bankruptcy Code. Jenny Martin Walker was appointed as the Debtor's Subchapter V Trustee.

## III. THE PLAN

### Introduction

The purpose of this Plan is to allow the Debtor to reorganize its financial affairs in a way that will permit it to pay Allowed Claims as proposed in this Plan.

To that end, the Debtor proposes to continue operating its online retail business. Reorganized PPL will fund its obligations under the Plan through its income.

**This Plan, if Confirmed by the Court, is a contract between Debtor and Holders of Allowed Claims for the repayment of such Claims as provided under this Plan. When Confirmed, the provisions of this Plan will be binding upon all Parties-in-Interest as provided under 11 U.S.C. § 1141.**

### Classification Generally

The categories of Claims and Equity Interests listed below classify Claims and Interests for all purposes, including (i) voting, (ii) confirmation of the Plan, and (iii) distribution pursuant to the Plan and applicable provisions of the Bankruptcy Code, including, without limitation, Section 1191. The Plan designates classes of Claims in the chart in <u>Section I</u> (above).

Any Class of Claims that, as of the date of the commencement of the Confirmation Hearing, contains no Allowed Claims will be deemed deleted from the Plan for purposes of determining acceptance or rejection of the Plan by such Class under Section 1129(a)(8) of the Bankruptcy Code. The classification of Claims against and Equity Interests in Debtor, its respective voting rights per classification, and the proposed treatment per classification pursuant to the Plan are as described in the chart in <u>Section I</u> (above).

**No Claim shall entitle a Creditor to a distribution of Cash or to other consideration pursuant to this Plan unless, and only to the extent that, such Claim is an Allowed Claim. Notwithstanding any other provisions of this Plan, the Debtor reserves all legal and equitable objections to the Allowance of any Claims.**

### Plan Classification

The classification of Claims against, and Equity Interests in the Debtor pursuant to this Plan is as follows (see above chart for further detailed information):

**Class 1**. Class 1 includes Non-Tax Priority Claims against the Debtor. There are no known Claims in this class. If such Claims are allowed, then Class 1 will be impaired.

**Class 2**. Class 2 includes the Allowed Secured Claim of Shopify Capital, Inc., which is allegedly secured by all of Debtor's personal property, including, without limitation, Debtor's inventory and equipment. Class 2 is impaired.

**Class 3**. Class 3 includes the Allowed Secured Claim of the United States Small Business Administration, which is allegedly secured by a junior lien on all of Debtor's personal property, including, without limitation, Debtor's inventory and equipment. Class 3 is impaired.

**Class 4**. Class 4 includes the Allowed General Unsecured Claims (including Deficiency Claims and Rejection Claims, if any). Class 4 is impaired.

**Class 5**. Class 5 includes the Interests of Mr. Thompson and Ms. Thompson. Class 5 is impaired.

## Unclassified Claims

Certain types of Claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and Holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with the applicable requirements of the Code. As such, the Debtor has not placed the following Claims in any class:

**1.     Administrative Claims and Expenses**

Allowed Administrative Expense Claims are costs or expenses of administering the Debtor's Chapter 11 case, which are allowed under Section 507 of the Bankruptcy Code. Except to the extent that the Holder of an Allowed Administrative Claim agrees to other, lesser treatment, each Holder of an Allowed Administrative Claim shall be paid in respect of such Allowed Claim the full amount thereof, in Cash, by the later of (i) the Effective Date; (ii) the date on which such Claim becomes an Allowed Administrative Claim; (iii) or the date shown within the Budget. **KNOWN ADMINISTRATIVE CLAIMS, IF ANY, ARE ESTIMATED AS OF THE EFFECTIVE DATE AND SHALL BE PAID AS PROVIDED IN THE BUDGET**.

**2.     Statutory Fees**

Statutory Fees, if any, are estimated as of the Effective Date and shown on the Budget. Statutory Fees shall be paid as reflected in the Budget.

**3.     Professional Fee Claims**

Professionals having Allowed Fee Claims shall be paid in full, in Cash, by the Debtor in

accordance with the Order Establishing Compensation Procedures for Professionals entered in the Bankruptcy Cases on July 20, 2023 (Dkt. 53) (the "**Professional Fee Order**"), as otherwise agreed in writing between the Debtor and the Professional, or, with respect to any disputed Fee Claim, the date on which the Bankruptcy Court order allowing such Fee Claim becomes a Final Order. After the Confirmation Date, Professionals of the Debtor shall be compensated as set forth in this Plan.

The Bankruptcy Court must rule on all Professional fees and expenses incurred from the Petition Date through and including the Confirmation Date before such fees will be payable, unless the order approving such Professional's retention provides otherwise. Professionals must file and serve a properly noticed fee application, and the Bankruptcy Court must rule on the application. Only the amount of fees allowed by the Bankruptcy Court will be payable under the Plan. Unpaid Fee Claims as of the Effective Date, if any, are estimated and shown on the Budget.

### 4.      Bar Dates for General Administrative Claims

The holder of an Administrative Claim *other than* (1) a Fee Claim, (2) a Post-petition Obligation incurred and payable in the ordinary course of business by the Debtor (but excluding personal injury claims and unliquidated claims – the Holders of which must initiate, on or before the Administrative Bar Date set forth in the Confirmation Order (the "**Administrative Bar Date**"), an appropriate procedure for allowance thereof under this subparagraph of this Plan), (3) Statutory Fees payable pursuant to 28 U.S.C. § 1930 (if any), (4) an Administrative Claim that has been Allowed on or before the Effective Date, and (5) a Cure Cost Claim, must File and serve on the Debtor, the United States Trustee, and the Subchapter V Trustee a request for payment of such Administrative Claim (a "**Request for Payment**"). Any Request for Payment must be Filed by the Administrative Bar Date.

Any Request for Payment must include at a minimum (a) the name and address of the Holder of the Claim, (b) the amount of the Claim, and (c) the basis of the Claim. ***Failure to File and serve such request timely and properly shall result in the Administrative Claim being forever barred and discharged***. Objections to any Request for Payment by any party in interest must be Filed by the Reorganized Debtor and served on the requesting party within 30 days after the Filing of the applicable Request for Payment (the "**Administrative Claim Objection Deadline**"). ***The Holders of the Administrative Claims enumerated in (1) – (5) above shall not be required to file a request for payment of their Administrative Claims, and shall be paid as specified in this Section***.

### 5.      Bar Dates for Fee Claims for Professionals or other Entities asserting a Fee Claim for services rendered before the Confirmation Date

Professionals or other Entities asserting a Fee Claim for services rendered before the Confirmation Date must File and serve on the United States Trustee and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court, an application for final allowance of such Fee Claim no later than 60 days after service of the notice of entry of the Confirmation Order. ***Failure to File timely and serve such application shall result in the Fee Claim being forever barred and discharged***. Objections to any Fee Claim must be Filed and served on the parties that were served with such application

and the requesting party by the later of (i) 30 days after the filing of the applicable request for payment of the Fee Claim and (ii) such later date as provided for by order of the Bankruptcy Court (the "**Fee Objection Deadline**").

### 6.    Priority Tax Claims

Priority tax claims are unsecured income, employment, property, and other taxes described by Section 507(a)(8) of the Bankruptcy Code ("**Priority Tax Claims**"). Each Holder of an Allowed Priority Tax Claim will be paid in respect of such Allowed Claim (including with respect to any interest that is determined to be part of its Allowed Claim):

(a) in Cash installments together with Statutory Interest via equal monthly payments (due on the 5th day of the month, with the first monthly payment due on the later of (i) the 5th day of January 2024 and (ii) the 5th day of the month after the month in which the priority tax claimant's claim becomes an Allowed Claim) until the fifth anniversary of the Petition Date (i.e., June 9, 2028) (provided that the Debtor may prepay the balance of any such Allowed Priority Tax Claims, including accrued interest if any, through the payment date). Any amount of the Allowed Priority Tax Claim that remains outstanding on June 9, 2028 shall be paid in full on that date; or

(b) the lesser amount or other treatment as the Holder of an Allowed Priority Tax Claim and Debtor might otherwise agree.

Known Priority Tax Claims as of the Effective Date, if any, are estimated and shown on the Budget. Any tax lien currently held by a Priority Tax Claimant shall continue to be enforceable against the Debtor and its property to the extent provided by law and survive confirmation of the Plan, discharge of the Debtor under the Bankruptcy Code, and dismissal or conversion of Debtor's Bankruptcy Case.

### 7.    Cure Costs

Any Cure Costs associated with any assumed Executory Contracts will be paid by the Debtor or, otherwise, by the Reorganized Debtor as estimated and shown on the Budget.

### Classification and Treatment of Claims and Interests

### [SEE ABOVE CLASSIFIED CLAIMS TREATMENT CHART]

### Means of Implementation of the Plan

### 1.    Funding of the Plan

The Plan is a reorganizing Subchapter V Chapter 11 plan. The funds required for implementation of the Plan and the distributions hereunder shall be provided from the Debtor's business income. The Debtor does not anticipate selling assets to fund the Plan but reserves the right to engage in such sales in its business judgment.

2. **The Reorganized Debtor**

The Plan will be administered by the Reorganized Debtor who will be vested with power and authority over all remaining assets of Debtor and its Estate, and with the obligation to administer and consummate distributions in accordance with the Plan. The Reorganized Debtor shall be deemed as of the Confirmation of the Plan to be the general representative of the Estate as authorized under and pursuant to the Bankruptcy Code, including, without limitation, Section 1123(b)(3) of the Bankruptcy Code. The Reorganized Debtor shall be indemnified by the Estate for fees and costs, including attorneys' fees, for any actions that it takes or fails to take, except for those actions done with gross negligence or malicious intent.

3. **Powers of the Reorganized Debtor**

Except as otherwise provided in this Plan, the Reorganized Debtor shall be vested with and shall have all rights, powers, and duties that it had immediately prior to Confirmation under Section 1184 of the Bankruptcy Code and otherwise, including, without limitation, with respect to any Causes of Action (whether or not commenced as of Confirmation). The Reorganized Debtor shall have exclusive control of the Assets, including, without limitation, any such Causes of Action. The Reorganized Debtor shall have authority to authorize the sale, abandonment, or other liquidation of the Assets. The Reorganized Debtor shall be the representative of the Estate and shall have the capacity to sue and be sued, as provided under Sections 323 and 1123(b)(3) of the Bankruptcy Code and provided otherwise under this Plan or the Bankruptcy Code.

4. **Overview of Duties of the Reorganized Debtor**

The Reorganized Debtor shall be empowered to and shall make all distributions required to be made under this Plan by the Reorganized Debtor and the Reorganized Debtor shall be authorized and empowered to fully act as of the Effective Date consistent with this Plan, including, without limitation, authorization to (a) prosecute, settle, or release all Causes of Action in accordance with the best interests of and for the benefit of the Creditors entitled to receive distributions under the Plan; (b) liquidate assets, including through any pending sale motions initiated by the Debtor, but not consummated as of the Effective Date or otherwise; (c) prosecute objections to Claims; (d) resolve Disputed Claims; (e) make distributions to the Holders of Allowed Administrative Claims, Allowed Priority Tax Claims, and Holders of other Allowed Claims (as their respective interests may appear in accordance with this Plan) in as prompt, efficient, and orderly a fashion as possible in accordance with the Plan; (f) perform administrative services related to the implementation of this Plan; (g) employ attorneys and other Professionals, as further set forth below, to assist in fulfilling the Reorganized Debtor's obligations under the Plan; and (h) otherwise act in accordance with this Plan and orders of the Bankruptcy Court.

5. **Plan Implementation Services**

The Reorganized Debtor shall be authorized to take such actions as Debtor may deem necessary to perform Debtor's obligations under the Plan and may retain the services of Professionals necessary to assist and advise the Reorganized Debtor in the performance of Debtor's duties under the Plan, including, without limitation, lawyers, accountants, brokers, and

auctioneers. Compensation and reimbursement of expenses earned and incurred by Professionals performing services for the Reorganized Debtor after the Confirmation Date shall be paid by the Reorganized Debtor monthly after rendition of bills to the Reorganized Debtor, and no further applications for compensation or reimbursement of expenses shall be necessary or required unless a dispute arises. In the event of any such dispute, the same shall be resolved by the Bankruptcy Court after notice and hearing.

### 6. Monthly Operating Reports

Through the entry of the Confirmation Order, the Debtor will file all Monthly Operating Reports within the times specified by the United States Trustee. The Debtor is not required to file Post Confirmation Reports because it filed under Subchapter V of the Bankruptcy Code.

### 7. Tax Returns

The Reorganized Debtor shall cause to be prepared and filed all federal, state, and local tax returns that are required to be filed by the Debtor that (i) have not been prepared or filed by the Effective Date or (ii) which fall due thereafter.

### 8. Application for Final Decree

The Debtor will seek its Final Decree as and when permitted by the Bankruptcy Code.

### 9. Standard of Care for Debtor-in-Possession

Reorganized Debtor shall perform the duties and obligations imposed on Reorganized Debtor by this Plan with reasonable diligence and care under the circumstances. Reorganized Debtor shall not be personally liable to the Creditors or to Persons entitled to receive distributions of assets under the Plan, except for its obligations under the Plan and except for such of its own acts as shall constitute fraud, bad faith, willful misconduct, gross negligence, or willful disregard of its duties. Except as aforesaid, any manager or manages of Reorganized Debtor shall be entitled to be exonerated and indemnified from time to time by the Reorganized Debtor against any and all losses, claims, costs, expenses, and liabilities arising out of or in connection with the Assets or the implementation of the Plan. The foregoing provisions of this paragraph shall also extend to the employees, Professionals, and agents of Reorganized Debtor. Upon the Effective Date, the Debtor shall be discharged as, and only as, provided under 11 U.S.C. § 1141 or other applicable provisions of Subchapter V of the Bankruptcy Code.

### 10. Subchapter V Trustee

**Appointment**. The Subchapter V Trustee was appointed by the United States Trustee in this case to perform the duties described in Section 1183(b) of the Bankruptcy Code, one of which is to facilitate the development of a consensual plan of reorganization.

**Termination of the Subchapter V Trustee's Services**. The services of the Subchapter V Trustee shall terminate upon "substantial consummation" of the Plan, as defined in Section 1101(2) of the Bankruptcy Code. The Debtor shall directly make all payments required under

this Plan, including the first payments required for substantial consummation of the Plan.

**Compensation of the Subchapter V Trustee**. The Subchapter V Trustee shall be entitled to apply for reasonable compensation for the Subchapter V Trustee's fees and expenses under 11 U.S.C. §§ 330 and 503(b)(3). Debtor shall pay all compensation awarded to the Subchapter V Trustee as agreed by Debtor and the Subchapter V Trustee or otherwise provided by the Bankruptcy Code, provided that a Final Order has been entered approving the Subchapter V Trustee's application for compensation.

## IV. EXECUTORY CONTRACTS

### Assumption or Rejection of Executory Contracts

As of September 1, 2023, that certain lease dated November 7, 2022,  by and between the Debtor and Old Towne Square Valdosta, LLC has been assumed by the Debtor in accordance with the provisions of Sections 365 and 1123, and any other relevant provisions, of the Bankruptcy Code. (*See* Dkt. No. 69).  All other leases or Executory Contracts shall be deemed rejected as of the Petition Date.

Nothing in this Plan requires payment of any Claim arising out of an Executory Contract that is disputed until all such disputes as to that Executory Contract are resolved.

### Cure Cost Claims

To the extent applicable, any Cure Costs associated with any assumed Executory Contracts will be paid in full as shown on the Budget; provided, however, that any Cure Costs that are later determined to be allowed and not proposed to be paid under the Budget shall be paid in twelve (12) monthly installments, commencing on later of the Effective Date, the date agreed on by the Reorganized Debtor and the holder of the Cure Cost in question, or thirty (30) days after the entry of a Final Order allowing the Cure Cost in question.

In the event of a dispute regarding: (i) the existence or amount of any Cure Costs; (ii) the ability of the Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the Executory Contract to be assumed; or (iii) any other matter pertaining to the assumption, then the Debtor intends to attempt to resolve such dispute consensually and, failing that, through order of the Bankruptcy Court. Either party to the Executory Contract which is the subject of the dispute may, in its discretion, file with the Bankruptcy Court a request for determination of the dispute within sixty (60) days after the Effective Date. If a request for determination is timely-filed, then the dispute shall be litigated to Final Order and shall then be paid by as outlined above for Executory Contracts unless there is another consensual resolution by the parties to the Executory Contract. **Any party to an Executory Contract that is the subject to such a dispute who does not file a request for determination within such sixty (60) day period will waive its rights with respect to such dispute and will be forever barred and estopped from prosecuting such dispute.**

**Rejected Contract; Rejection Claims**

The following shall apply to any rejections: **Each other Person who is a party to an Executory Contract or unexpired lease rejected by the Debtor, including those rejected under this Plan, must File, by not later than 30 days after service of notice of entry of the Confirmation Order or by such other date as provided in the Confirmation Order, a Proof of Claim for any Rejection Claim, or be forever barred.** A copy of such Proof of Claim shall be Filed with the Court and served on the Reorganized Debtor, Counsel for the Reorganized Debtor, and the Subchapter V Trustee in accordance with the notice provisions of the Plan not later than 30 days after service of notice of entry of the Confirmation Order. If the Rejection Claim becomes an Allowed Claim, then such Claim shall be classified as an Unsecured Claim and paid in accordance with the applicable class.

Objections to Rejection Claims must be Filed and served on the Claimant and upon the parties that were served with such Claims by the later of (a) 90 days after the Filing of the applicable Proof of Claim for such Rejection Claim or (b) such later date as provided for by order of the Bankruptcy Court, which order may be entered without further notice or hearing.

**V.    PROVISIONS GOVERNING PAYMENTS AND DISTRIBUTIONS**

**Manner of Payment**

Any payment in Cash to be made by the Reorganized Debtor, whether such payment is pursuant to confirmation under § 1191(a) or § 1191(b), shall be made, at the election of the Reorganized Debtor, by check drawn on a domestic bank or by wire transfer from a domestic bank. **The Reorganized Debtor, rather than the Subchapter V Trustee, shall make the payments, notwithstanding whether the Plan is confirmed consensually.**

**Funds and Accounts for Payment of Claims and Plan Implementation**

As soon as practicable after the Effective Date, the Reorganized Debtor shall or may, as applicable, establish, maintain, and manage funds and/or accounts to implement the Plan as follows:

**1.    Disputed Claims Reserve**

As of and after the Effective Date, the Reorganized Debtor shall, if there are Disputed Claims that, collectively, are in excess of $25,000, establish and maintain an interest-bearing account which shall be called the Disputed Claims Reserve, into which such Reorganized Debtor shall deposit the distributions that would otherwise be due to holders of such Disputed Claims. Such Disputed Claims Reserve shall be maintained by the Reorganized Debtor until all of such Disputed Claims have been allowed or disallowed by Order of the Bankruptcy Court. Thereafter, any excess funds in the Disputed Claims Reserve shall be transferred back to the Reorganized Debtor.

## 2.     Plan Expense Reserve

On the Effective Date, or as soon thereafter as reasonably practicable, the Reorganized Debtor may create out of any funds not subject to a lien a reserve for plan expenses, including costs necessary to adequately fund pursuit of Causes of Action which the Reorganized Debtor believes is likely to produce a recovery in excess of the costs of prosecution of such Causes of Action. The Reorganized Debtor may reserve and transfer an appropriate amount of Cash into such plan account as the Reorganized Debtor deems necessary and desirable to pay plan expenses efficiently and promptly.

## 3.     Management of Accounts Established Pursuant to the Plan

Money deposited into any accounts established and maintained by the Reorganized Debtor under the Plan shall be invested as specified in this paragraph and need not comply with Bankruptcy Code Section 345. Any accounts established by the Reorganized Debtor shall be established at a federally-insured financial institution or may be invested in government-backed securities in a brokerage account approved by the United States Trustee. For interest-bearing accounts, any interest earned upon balances on deposit in such accounts shall be used to fund the Plan. The Reorganized Debtor may relocate any or all accounts to another federally-insured financial institution or approved brokerage account, from time to time, until all payments provided for under the Plan have been made. Following all distributions required herein, all remaining funds shall be property of the Reorganized Debtor.

## Additional Distribution Provisions

## 4.     Payment of Claims and Interests

Notwithstanding any other provision of the Plan, the Reorganized Debtor shall make no distribution to Holders of Claims that are not Allowed Claims as defined in the Plan. Notwithstanding any other provision of the Plan, the Reorganized Debtor shall have discretion to make the distributions called for under the Plan at the times specified in the Plan or earlier if it deems such earlier distribution to be necessary or beneficial.

## 5.     Unclaimed Distributions

Under the Plan, payment will be stopped on checks disbursed by the Reorganized Debtor to Holders of Allowed Claims if such checks remain not cashed ninety (90) days after the date of disbursement. The Cash represented by such checks shall become property of the Reorganized Debtor pursuant to Section 347(b) of the Bankruptcy Code.

## 6.     Rounding of Dividend Amounts

Notwithstanding any other provision of the Plan, the Reorganized Debtor shall not be required to make any distribution of less than $15.00 or such other dollar limitation imposed by the Bankruptcy Code or applicable Bankruptcy Rules to the Holder of any Allowed Claim, and may round all distributions to the nearest $1.00.

## 7. Distributions to the Last Known Address

Distributions to Holders of Allowed Claims will be sent to the last known address set forth on such Holder's Proof of Claim Filed with the Court or, if no Proof of Claim has been filed, the address listed on the Schedules. Holders of Claims may change the address to which distributions, if any, will be sent by furnishing written notice to the Reorganized Debtor as set forth herein. A proper notice of change of address will be effective for a distribution if received at least 30 days in advance of such distribution date. U.S. Postal Service notifications of changes of address will be honored, provided that the Reorganized Debtor shall have no obligation to investigate the address of the Holder of an Allowed Claim following expiration of such U.S. Postal Service notifications.

If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Reorganized Debtor is notified by such Holder in writing of such Holder's then-current address, at which time the Reorganized Debtor shall recommence Distributions to such Holder without interest but further provided that (i) any distributions not claimed within 6 months of return shall be irrevocably retained by the Reorganized Debtor and (ii) such Holder shall waive its right to such Distributions.

All Distributions returned to the Reorganized Debtor and not claimed within six (6) months of return shall be irrevocably retained by the Reorganized Debtor notwithstanding any federal or state escheat laws to the contrary. If any Distribution on an Unsecured Claim ("**Unsecured Distribution**") is tendered by the Reorganized Debtor to a Holder of an Unsecured Claim and returned, refused, or otherwise undelivered ("**Unsecured Distribution Refusal**"), the Reorganized Debtor shall not be responsible for making any further Unsecured Distribution on account of such Unsecured Claim. Accordingly, in the event of an Unsecured Distribution Refusal, the Reorganized Debtor shall be relieved of any obligation to make said payment or Distribution and the Reorganized Debtor is relieved of any obligation to make further payments or Distributions on such Unsecured Claim under the Plan.

If any Distribution on a Secured Claim or Priority Claim ("**Secured or Priority Distribution**") is tendered by the Reorganized Debtor to a Holder of a Secured Claim or Priority Claim and returned, refused or otherwise undelivered ("**Secured or Priority Distribution Refusal**"), the Holder of such Secured Claim or Priority Claim, as applicable, shall be deemed to have waived its right to such tendered payment or Distribution and such tendered payment or Distribution shall be deemed satisfied.

In the event of a Secured or Priority Distribution Refusal, any obligation of the Reorganized Debtor to make any additional or further payment on such Secured Claim or Priority Claim shall be tolled until such time as: (i) notice is provided to the Reorganized Debtor that the Holder of such Secured Claim or Priority Claim seeks to receive payments from the Reorganized Debtor on the Secured Claim or Priority Claim or otherwise seeks to enforce the Reorganized Debtor's obligations under the Plan or otherwise enforce the Secured Claim or Priority Claim, and (ii) any dispute regarding the Secured or Priority Distribution Refusal and its implications is resolved by agreement of the parties or the Bankruptcy Court (the "**Tolling Period**"). Only in the event of such notice to the Reorganized Debtor shall the Reorganized Debtor's obligations to perform as to the applicable Secured Claim or Priority Claim resume.

The Tolling Period shall: (i) extend the term of the payments on such Secured Claim or Priority Claim, and (ii) bar any interest from accruing on the Secured Claim or Priority Claim until such time as any dispute regarding the Secured or Priority Distribution Refusal shall be resolved by a Final Order of the Court.

Notwithstanding anything in the Plan or otherwise to the contrary, no provision allowing the imposition of late fees, default interest, late charges, damages, or costs and fees against the Reorganized Debtor or its Assets shall be applicable during the Tolling Period or any period during which a dispute regarding a Tolling Period is being resolved. For purposes of clarification, the Reorganized Debtor shall not be required to make any lump sum cure of payments or Distributions which would have otherwise come due during the Tolling Period or any period during which a dispute regarding a Tolling Period is unresolved, and the Reorganized Debtor shall recommence Distributions upon the resolution of such on the terms in the Plan as tolled.

**8.      Assignment of Claims**

Notwithstanding Bankruptcy Rule 3001(e), written notice of any assignment of an Allowed Claim shall be given to the Reorganized Debtor by the assignee thereof before the Reorganized Debtor shall be obligated to direct distributions to such assignee. Absent receipt by the Reorganized Debtor of such written notice of assignment, neither the Reorganized Debtor nor the Estate shall have any liability to any such assignee or to any other Person on account of a misdirected distribution.

**9.      Withholding or Other Taxes**

Any federal, state, or local withholding or other taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes.

**10.      Setoffs**

Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Debtor or the Reorganized Debtor, as applicable, may, but shall not be required to, setoff against any Claim the payments or other distributions to be made pursuant to the Plan in respect of such Claim for claims of any nature whatsoever Debtor may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Debtor or Reorganized Debtor, as applicable, of any such Claim or other Claims, rights, or Causes of Action that the Debtor or the Reorganized Debtor may have against such Holder.

**11.      Subordination Rights**

All subordination rights, claims, and defenses of Debtor and Reorganized Debtor shall remain valid, enforceable, and unimpaired in accordance with Section 510 of the Bankruptcy Code or otherwise, except as otherwise specifically provided in the Plan.

**12. No Interest**

Except as expressly stated in the Plan or as allowed by the Bankruptcy Court, no interest, penalty, or late charge arising after the Petition Date, or related expenses or disbursements arising after the Petition Date, will be allowed on or in connection with any Claim. This provision will apply whether the distribution on such Claim is made on the Effective Date or thereafter.

## VI. ALLOWANCE AND DISALLOWANCE OF CLAIMS

Except as expressly provided in this Plan, the Reorganized Debtor after Confirmation will have and retain any and all rights and defenses that the Debtor had with respect to any Claims as of the Petition Date, including the Causes of Action and the Filing of any motions or other pleadings for estimation of the amount of Disputed Claims.

### Examination and Objections to Claims

**1. Examination**

Following the Effective Date, the Reorganized Debtor shall examine all Claims not previously objected to by the Debtor and shall have the responsibility of filing objections to the allowance of such Claims and continuing prosecutions of objections to Claims filed prior to the Effective Date.

**2. Objection Deadlines**

Except as otherwise specified herein (including, without limitation, with respect to Administrative Claims, Fee Claims, and Cure Cost Claims), objections to Claims shall be Filed with the Bankruptcy Court and served upon Creditors by the Claims Objection Bar Date.

After an order, judgment, decree, or settlement agreement allowing a Disputed Claim becomes a Final Order, Distributions with respect to and on account of such previously Disputed Claim will be made on or before the time of the next scheduled distribution to holders of Allowed Claims in the Class in which the previously Disputed Claim is allowed.

### Claims Resolution

Objections to Claims may be litigated to judgment, settled, or withdrawn by the Reorganized Debtor.

**3. Settlement of Disputed Claims over $150,000**

Any proposed settlement of a Disputed Claim where the original face amount of the Claim is more than $150,000 shall be subject to the approval of the Bankruptcy Court after 21-days' notice and an opportunity for a hearing has been served on the Special Notice Parties.

4. **Settlement of Disputed Claims between $50,000 and $150,000**

The Reorganized Debtor may settle any Disputed Claim where the original face amount of such Claim is between $50,000 and $150,000 without Bankruptcy Court approval, provided that the Special Notice Parties shall have had 14-days' notice of any such proposed settlement prior to consummating the settlement. If an objection to the proposed settlement is served on the Reorganized Debtor and not resolved consensually within 14 additional days after expiration of the 14-day notice period, then the Bankruptcy Court shall determine whether such proposed settlement should be approved.

5. **Settlement of Disputed Claims of less than $50,000**

If the original face amount of the Disputed Claim is less than $50,000, then Reorganized Debtor has authority to settle such Claim without any notice or approval of any other party.

**Estimation of Claims**

The Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any Claim pursuant to Section 502(c) of the Bankruptcy Code, as applicable, regardless of whether Debtor or Reorganized Debtor previously have objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during the litigation concerning any objection to any Claims, including, without limitation, during the pendency of any appeal relating to any such objection.

Subject to the provisions of Section 502(j) of the Bankruptcy Code, if the Bankruptcy Court estimates any contingent or unliquidated Claim, then the amount so estimated shall constitute the Allowed amount of such Claim. If the estimated amount constitutes a maximum limitation on the amount of such Claim, then the Debtor or the Reorganized Debtor may pursue supplementary proceedings to object to the allowance of such Claim.

All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

## VII. VOTING PROCEDURES AND REQUIREMENTS

This section describes the procedures pursuant to which the Plan will or will not be confirmed.

**Eligibility to Vote**

The Debtor is soliciting acceptances of the Plan from each Class of Creditors that is eligible to vote, which are those classes identified in this Plan as "impaired" (the "**Voting Classes**"). Only claimants with Allowed Claims are eligible to vote and have their vote count for confirmation purposes.

A claim is considered an **Allowed Claim**" if (i) the Debtor's schedules filed in the Case does not list the Claim as being "disputed," "contingent," or "unliquidated" or (ii) a claimant filed a Proof of Claim by the Proof of Claim Bar Date. If a claimant has filed a Proof of Claim, it will be an "Allowed Claim" unless a written objection is filed by the Debtor or the Reorganized Debtor.

If you have any question concerning whether your Claim is an "Allowed Claim," then contact any attorney for the Debtor at the address shown on the first page of this Plan.

This Plan is being sent to all holders of Unclassified Claims, Creditors, and Interest holders, whether or not entitled to vote. Under Section 1141 of the Bankruptcy Code, the Plan, if approved by the Bankruptcy Court ("**Confirmed**"), will bind all parties, whether or not such parties are entitled to vote for or against the Plan and whether or not such parties have voted or not voted.

### Ballots and Voting Deadlines

**1. Ballots**

You will receive a Ballot along with a copy of this Plan. All votes to accept or reject the Plan must be cast by using the Ballot. No other votes will be counted.

Please fill out the Ballot and return it to the Bankruptcy Court at the address listed below:

Clerk, United States Bankruptcy Court
P.O. Box 2147
Columbus, Georgia 31902

DO NOT RETURN ANY INVOICES, SECURITIES, NOTES, OR
PROOFS OF CLAIM WITH YOUR BALLOT.

If delivery is by mail, then enough time should be allowed to ensure timely delivery to and actual receipt by the Bankruptcy Court by the Voting Deadline.

The Debtor in its sole discretion may waive an objection to Ballots filed after the Voting Deadline, or related to Disputed Claims (e.g., those listed in the Debtor's Schedules as disputed, unliquidated, or contingent, or for which a Proof of Claim has been filed and to which the Debtor has objected). Otherwise, such ballots will not be counted unless ordered otherwise by the Bankruptcy Court.

If a Ballot is signed by trustees, executors, administrators, guardians, attorneys-in-fact, officers of corporations, or others acting in a fiduciary or representative capacity, then such persons should indicate such capacity when signing.

**2. Revocation of Ballots**

Ballots to accept or reject the Plan may be revoked or changed only with the approval of the Bankruptcy Court.

3. **Voting Multiple Claims**

Persons holding Claims in more than one Class will vote such Claims in each Class.

4. **Incomplete Ballots**

Any Ballot received which is unsigned or does not indicate either an acceptance or a rejection of the Plan, will not be counted. Incomplete ballots may be amended by the Holder of the Claim on account of which the Ballot is cast to cure the deficiency, provided that the amendment is filed before the beginning of the hearing on confirmation of the Plan.

### Confirmation Hearing

At the Confirmation Hearing, the Bankruptcy Court will (i) hear and determine objections, if any, to the Plan and to confirmation of the Plan that have not been previously disposed of, and (ii) determine whether to confirm the Plan. All objections, if any, to confirmation of the Plan must be filed with the Bankruptcy Court and served pursuant to the accompanying Order.

The Confirmation Hearing may be adjourned from time to time by additional notice prior the hearing, or by announcement in Bankruptcy Court on the scheduled date of the hearing.

## VIII. FINANCIAL INFORMATION

The Debtor filed Schedules with the Bankruptcy Court as required by the Bankruptcy Code. The Debtor will supplement and amend its Schedules as necessary and appropriate from time to time.

The Debtor has also been filing Monthly Operating Reports, and will continue to do so through the Confirmation Date. This financial information has not been included in this Plan, but may be examined at office of the Clerk of the Bankruptcy Court, 901 Front Avenue, Columbus, Georgia 31902 or online through PACER at http://www.pacer.gov/.

## IX. ACCEPTANCE AND CONFIRMATION

### Acceptance of Plan

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all of the applicable requirements of Section 1191 of the Bankruptcy Code are met.

Holders of Allowed Claims in Impaired Classes are entitled to vote to accept or reject the Plan.

### Feasibility

As a condition to confirmation of the Plan, Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of the Plan is not likely to be followed by the liquidation of the

Reorganized Debtor unless such liquidation is proposed in the Plan. This requirement is addressed further below.

### "Best Interests of Creditors" Test; Liquidation Analysis

Section 1129(a)(7) of the Bankruptcy Code requires that, with respect to each impaired Class of claims or interests, that such Class either accept the Plan or that each holder in such Class "will receive or retain under the plan on account of such claim or interest, property of a value as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date."

**Debtor submits that payments proposed under the Plan will result in a dividend that is greater than what could be expected if Debtor's assets were "liquidated under chapter 7."**

The Liquidation Analysis attached in **Exhibit A** represents Debtor's projection of the liquidation value of Debtor's respective assets under Chapter 7, as of the Effective Date. As shown on Exhibit A, a hypothetical Chapter 7 liquidation would result in a distribution to unsecured creditors that is less than the distributions to unsecured creditors that are proposed in the Plan. In fact, it shows unsecured creditors receiving a 0.00% dividend in a liquidation. On the other hand, the unsecured creditors will receive a 1.08% dividend under the Plan. Thus, the Debtor believes that the proposed Plan satisfies the "Best Interest of Creditors" Test under 11 U.S.C. § 1129(a)(7).

## X.     FEASIBILITY

The Debtor's budget is attached as **Exhibit B** (the "**Budget**"). The Budget projects sufficient receipts, primarily from the revenue and ordinary income received by the Reorganized Debtor, to make payments on all Allowed Claims in each Class. Because the projections are based on historical income and revenue combined with projections for the future of the Reorganized Debtor's revenues from its business, actual results will likely vary. There will be no event of default under the Plan if the Reorganized Debtor fails to meet its projected results in a given year.

Based on the Debtor's recent performance coupled with its reasonable projections based thereon for continued stability and growth, the Debtor believes that the Plan is feasible, fair, and equitable, and provides the best potential for payment of all Claims.

## XI.     CERTAIN TAX CONSEQUENCES

THE CONFIRMATION AND EXECUTION OF THE PLAN MAY HAVE TAX CONSEQUENCES TO HOLDERS OF CLAIMS AND INTERESTS AND TO THE DEBTOR. THE INCOME TAX LAWS APPLICABLE TO RECEIVING A DISTRIBUTION OR DEDUCTING A LOSS FROM A BANKRUPT ESTATE ARE COMPLEX. DEBTOR HAS NOT REQUESTED A RULING FROM THE INTERNAL REVENUE SERVICE NOR HAS THE DEBTOR OBTAINED AN OPINION OF COUNSEL WITH RESPECT TO THE TAX CONSEQUENCES OF THE PLAN FOR CREDITORS OR THE DEBTOR. THUS, NO

ASSURANCE CAN BE GIVEN AS TO THE TAX CONSEQUENCES OF THE PLAN. NO REPRESENTATIONS ARE MADE REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE PLAN AS TO ANY HOLDER OF A CLAIM OR ANY OTHER ENTITY OR PERSON. EACH HOLDER OF A CLAIM SHOULD CONSULT ITS TAX PROFESSIONAL TO UNDERSTAND FULLY THE FEDERAL, STATE, AND LOCAL TAX CONSEQUENCES OF THE PLAN.

## XII. EFFECT OF CONFIRMATION

### Vesting of Debtor's Assets

All property comprising the Estate (including Causes of Action and the Assets) (collectively, "Property of the Estate") shall revest in the Reorganized Debtor only if and to the extent provided in the Bankruptcy Code (including, without limitation, 11 U.S.C. § 1186). All Property of the Estate shall, upon conformation of the Plan and in accordance with 11 U.S.C. § 1141(c), be free and clear of all Claims, liens, charges, encumbrances, rights and Interests of Creditors and Equity Interest Holders, as the Plan deals with all Property of the Estate. This Plan, if confirmed, will evidence the release of any and all liens or encumbrances against all Property of the Estate of the Debtor, unless such lien or encumbrance is specifically retained in the Plan.

### Discharge of Reorganized Debtor

The effects of Confirmation of the Plan shall be as provided under Bankruptcy Code, which applicable provisions of the Bankruptcy Code are hereby incorporated into the Plan by this reference, including, without limitation, all applicable provisions and subparts of its Section 1141 in a Subchapter V bankruptcy case, its Section 524 (Effect of Discharge), and its Section 1192 (Discharge Under Subchapter V). Specifically:

1. **Discharge if Plan Confirmed Under Section 1191(a).**

If this Plan is confirmed under Section 1191(a), then, on the Effective Date, the Debtor and the Reorganized Debtor will be discharged respectively from any debt that arose before Confirmation of this Plan, to the extent specified in Section 1141(d)(1)(A) of the Bankruptcy Code. The Debtor and the Reorganized Debtor will not be discharged from any debt (i) imposed by this Plan or (ii) excepted from discharge under Section 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

2. **Discharge if Plan Confirmed Under Section 1191(b).**

If the Plan is confirmed under Section 1191(b), then Confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on the completion of all payments due within the first 5 years of this Plan, or as otherwise provided in Section 1192 of the Bankruptcy Code. The Debtor and the Reorganized Debtor will not be discharged from any debt (i) on which the last payment is due after the first 3 years of the Plan, or as otherwise provided in Section 1192 or (ii) excepted from discharge under Section 523(a) of the Bankruptcy Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## Terms Binding

Upon the entry of the Confirmation Order, all provisions of the Plan, including all agreements, instruments and other documents filed in connection with the Plan and executed by the Debtor or the Reorganized Debtor in connection with the Plan, will be binding upon the Debtor, the Reorganized Debtor, all Claim and Interest Holders, and all other Persons that are affected in any manner by the Plan. All agreements, instruments, and other documents filed in connection with the Plan will have full force and effect, and will bind all parties thereto as of the entry of the Confirmation Order, whether or not such exhibits actually will be executed by parties other than the Debtor or the Reorganized Debtor, or will be issued, delivered or recorded on the Effective Date or thereafter.

All Pre-petition contracts, undertakings, and obligations of the Reorganized Debtor, other than to Holders of Claims in Classes that are unimpaired under the Plan, are deemed novated by the terms of the Plan. No default shall be deemed to exist under any such novated obligations as of the Effective Date of the Plan; and, notwithstanding the delay of discharge in this case, no Holder of any claim may exercise any right upon default with respect to the Reorganized Debtor, the Assets, or otherwise until the occurrence of a default under the Plan.

## Continuation of Pre-Confirmation Injunction or Stays

All injunctions or stays, whether by operation of law or by order of the Bankruptcy Court, provided for in the Bankruptcy Case pursuant to Sections 105, 362, or 525 of the Bankruptcy Code, or otherwise that are in effect on the Confirmation Date or imposed by the Confirmation Order shall remain in full force and effect until the Final Decree.

## Post-Confirmation Effects of Evidences of Claims or Interests

On the Effective Date, except as otherwise provided in the Plan, all promissory notes, share certificates, warrants, membership interests, instruments, indentures, agreements, or other documents evidencing, giving rise to, or governing any Claim or Interest in or against the Debtor will represent only the right, if any, to participate in the distributions contemplated by the Plan.

## Exculpation and Limitation of Liability

The Debtor, the Reorganized Debtor, PPL, and each of their respective members, officers, directors, agents, attorneys, representatives, heirs, assigns, and employees (including Professionals) (collectively, the "**Exculpated Persons and Releasees**") shall neither have nor incur any liability to any Person or Entity for any act taken or omitted to be taken by any Exculpated Person in connection with or related to the formulation, negotiation, preparation, dissemination, implementation, administration, Confirmation, or consummation of this Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with this Plan (except for any obligations of Reorganized Debtor or the Estate arising under or in connection with this Plan or in the Ordinary Course of Business). Except for obligations arising under this Plan on or after its Effective Date, the Exculpated Persons shall have no liability to any Debtor, Holder of a Claim, Holder of an Interest, other party in interest in

the Bankruptcy Cases, or any other Person for actions taken or not taken under this Plan, in connection herewith or with respect hereto, or arising out of their administration of this Plan or the property to be distributed under this Plan, including failure to satisfy any condition or conditions, or refusal to waive any condition or conditions, to the occurrence of the Effective Date, and in all respects such Exculpated Persons shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan or with respect to the Bankruptcy Cases. Provided, however, that the foregoing provisions of this paragraph shall have no effect on the liability of any Exculpated Person that results from any such act or omission that is determined in a Final Order to have constituted fraud, bad faith, willful misconduct, gross negligence, or a willful disregard of duties imposed by the Plan.

## XIII. RETENTION OF JURISDICTION

Notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, until such time as all payments and distributions required to be made and all other obligations required to be performed under this Plan have been made and performed by the Debtor and the Reorganized Debtor, as applicable, and the Bankruptcy Case is closed by Final Decree, the Bankruptcy Court shall have and retain the maximum jurisdiction as is legally permissible, including, without limitation, jurisdiction over the Assets, the Debtor, the Reorganized Debtor, and the Estate, including, without limitation, for the following purposes:

(a)　　Claims. To determine the allowance, classification, validity, priority of, or any dispute with respect to Claims against Debtor upon motion by the Reorganized Debtor or any other party-in-interest;

(b)　　Injunctions, etc. To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person; to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court; to issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan and all matters referred to herein; and to determine all matters that may be pending before the Bankruptcy Court in the Bankruptcy Cases on or before the Effective Date with respect to any Entity;

(c)　　Professional Fees. To determine, before or after the Effective Date, any and all applications for allowance of compensation and expense reimbursement of Professionals for services rendered before the Confirmation Date, as provided for in this Plan;

(d)　　Certain Priority Claims; Administrative Claims. To determine any Priority Tax Claims, other priority claims, or any request for payment of Administrative Claims;

(e)　　Dispute Resolution. To resolve any dispute arising under or related to the implementation, execution, consummation, or interpretation of the Plan and the making of distributions thereunder, including, without limitation, any dispute concerning payment of fees to Professionals and expenses of the Reorganized Debtor;

(f)     <u>Leases and Executory Contracts.</u> To determine the allowance of any Claims or other disputes resulting from the rejection of Executory Contracts and unexpired leases;

(g)     <u>Actions.</u> To determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted prior to the closing of the Bankruptcy Case, including the determination of all controversies and disputes arising under and in connection with the Debtor's Assets, the Causes of Action, and any remands;

(h)     <u>Plan Modification.</u> To modify the Plan under Section 1193 of the Bankruptcy Code or other applicable provision of the Bankruptcy Code and remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purposes;

(i)     <u>Aid Consummation.</u> To issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Entity, to the full extent authorized by the Bankruptcy Code;

(j)     <u>Implementation of Confirmation Order.</u> To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(k)     <u>General Matters.</u> To determine all such other matters, and for such other purposes, as may be provided in the Confirmation Order or the Plan, or as otherwise may be authorized or not inconsistent with the provisions of the Bankruptcy Code;

(l)     <u>Final Decree.</u> To enter an order and/or Final Decree closing the Bankruptcy Cases.

## XIV.   PRESERVATION OF CAUSES OF ACTION

### Rights with Regard to Causes of Action

Upon the occurrence of the Effective Date, all Causes of Action of the Debtor and the Estate will be retained and preserved for enforcement by the Reorganized Debtor. The Reorganized Debtor will have the power and right to commence or continue and otherwise enforce any Causes of Action of the Debtor and/or the Estate, all of which will be retained and preserved hereby, notwithstanding Confirmation or consummation of the Plan.

Unless Causes of Action, including, without limitation, objections to allowance of claims, against a Person or Entity are expressly waived, relinquished, released, compromised, or settled in the Plan or by any Final Order, the Debtor, the Reorganized Debtor, and Estate, on behalf of themselves and holders of Allowed Claims and in accordance with Bankruptcy Code Section

1123(b)(3)(B), expressly reserve and will retain for enforcement post-Confirmation and post-consummation all Causes of Action and unknown Causes of Action, including, without limitation, the Causes of Action described in this Plan, as well as any other Causes of Action or unknown Causes of Action that the Debtor or the Estate had or had the power to assert immediately before Confirmation, for adjudication or later adjudication, and, therefore, no waiver or preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches will apply to such Causes of Action upon or after the Confirmation or consummation of the Plan solely due to such Confirmation or Consummation of the Plan.

Additionally, the Debtor and the Estate expressly reserve and retain the right to object to the allowance of any Claim or pursue or adopt or otherwise enforce (and the right of the Reorganized Debtor to do so) any claims. Nothing contained in this Plan or any related document will constitute a waiver of the rights, if any, of the Debtor, the Reorganized Debtor, or the Estate, through the Reorganized Debtor, to a jury trial with respect to any Cause of Action or objection to any Claim or Interest.

Potential Causes of Action currently being investigated by the Debtor, which may, but need not be, pursued by the Debtor prior to the Effective Date and by the Reorganized Debtor after the Effective Date as warranted but which will be retained after Confirmation include, without limitation, the following:

<u>**Causes of Action**</u>. All Causes of Action, whether legal, equitable, or statutory in nature, arising out of, or in connection with the Debtor or its operations, including, without limitation, the following: possible claims against vendors, assignees, suppliers, general contractors, or subcontractors for warranty, indemnity, back charge/set-off issues, overpayment or duplicate payment issues; deposits or other amounts owed by any creditor, lessor, utility, supplier, vendor, assignee, or other Person or Entity; employee, management or operational matters; claims against assignees arising from the various leases and assignment agreements relating thereto, including, without limitation, claims for overcharges, maintenance, and other similar charges; financial reporting; environmental matters; actions against insurance carriers relating to coverage, indemnity or other matters; actions against current or former officers, directors, employees, parents, subsidiaries, or Affiliates; counterclaims and defenses relating to notes or other obligations; and contract or tort claims which may exist or subsequently arise;

<u>**Avoidance Actions**</u>. Any and all avoidance actions pursuant to any applicable section of the Bankruptcy Code, including, without limitation, Sections 544 (including, but not limited to, all Causes of Action arising under State law and maintainable under Section 544 of the Bankruptcy Code), 545, 547, 548, 549, 550, 551, 553(b) and/or 724(a) of the Bankruptcy Code, and other similar state laws such as fraudulent conveyance and preference statutes, arising from any transaction involving or concerning the Debtor; and

<u>**Any and all other Claims and Causes of Action of the Debtor**</u>. In addition, there may be other Causes of Action which currently exist or may subsequently arise that are not set forth in the Plan because the facts upon which such Causes of Action are

based are not currently or fully known by the Debtor and, as a result, cannot be raised during the pendency of the Chapter 11 Case (collectively, the "**Unknown Causes of Action**"). The failure to list any such Unknown Cause of Action herein or in other Plan documents is not intended to and will not limit the rights of the Reorganized Debtor to pursue any Unknown Cause of Action to the extent the facts underlying such Unknown Cause of Action subsequently become fully known to the Debtor or the Reorganized Debtor or other parties in interest.

The Statements of Financial Affairs filed in the Bankruptcy Case reflects potential preferential payments, if any, based on the presumption of the insolvency of the Debtor during the 90 days preceding the Petition Date under 11 U.S.C. § 547. If you received a payment or other transfer within 90 days of the bankruptcy, then such transfer may be subject to avoidance under the Bankruptcy Code, including its Sections 544, 547, and 550. The Debtor will continue to review its books and records for any of such payments. **If you received such a payment, then, notwithstanding that such payment might not be currently listed on the Statement of Financial Affairs or itemized in this Plan, you are deemed to be on notice of such payment based on your receipt of it and to be on notice of any potential avoidance suit to recover it**. Such a payment is potentially avoidable as a preference under Section 547 of the Bankruptcy Code. The Bankruptcy Code provides defenses against the forced repayment of such a payment, including, but not limited to, that such payment was in the ordinary course of business of both the Debtor and the transferee, that the Debtor was solvent on the date the payment was made, or that new value was provided at or about the same time as the payment.

Finally, attached on **<u>Schedule 3</u>** is a list of creditors and other parties-in-interest, if any, who, as known by the Debtor as of the date of this Plan, have transacted with the Debtor over the four-year period and the 90-day period respectively, prior to the Petition Date. Such parties could be subject to avoidance actions as defendants in actions brought by the Debtor or the Reorganized Debtor. Schedule 3 is intended solely to provide information to potential voting creditors so that they can make an informed voting decision and to make sure that such claims are preserved in favor of the Debtor and the Reorganized Debtor. The recitation is subject to change, revision, and expansion, and is not intended to reflect a definitive list of potential Causes of Action.

### <u>Representative of the Estate</u>

In accordance with Section 1123(b)(3) of the Bankruptcy Code, any Claims, rights, and Causes of Action that the Debtor, Reorganized Debtor, or Estate may hold or have the power to commence at any time against any Person or Entity will be preserved and retained and enforced by the Reorganized Debtor, and the Reorganized Debtor will have the right to continue or commence or otherwise enforce, as the authorized representative of the Debtor, the Estate, and Reorganized Debtor, any and all such Claims, rights, or Causes of Action. The Reorganized Debtor may pursue any and all such Claims, rights, or Causes of Action, as appropriate, in accordance with the best interests of the Debtor and the Holders of Allowed Claims. Subject to the provisions of the Plan, the Reorganized Debtor will have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such Claims, rights, and Causes of Action.

## XV.    MISCELLANEOUS PROVISIONS OF THE PLAN

### Conditions to Confirmation

The following are conditions precedent to Confirmation of the Plan: the Confirmation Order shall have been signed by the Bankruptcy Court and entered by the Clerk of the Bankruptcy Court.

### Conditions to the Occurrence of the Effective Date

In addition to the other conditions set out in the definition of the "Effective Date," a condition precedent to the occurrence of the Effective Date is that the Confirmation Order shall have been entered, the time for appeal shall have passed, and such Confirmation Order shall not have been stayed pending any appeal.

### Waiver of Conditions

Debtor may agree to waive any of the conditions precedent set forth above in writing executed by Debtor.

### Plan Modification

The Plan may be altered, amended, or modified by the proponent before the Confirmation Date as provided in Section 1193 of the Bankruptcy Code.

### 1.    Pre-Confirmation Modification.

Debtor may modify the Plan at any time before the Confirmation Hearing by filing the modification with the Court.

### 2.    Modification After Confirmation And Prior to Substantial Consummation.

After Confirmation and before substantial consummation, Debtor may modify the Plan upon a showing that circumstances warrant such a modification and after a notice and hearing. If the Plan was confirmed under Section 1191(a), any Holder of a Claim or Interest that has accepted or rejected the Plan is deemed to have accepted or rejected, as the case may be, the plan as modified, unless, within the time fixed by the Court, such Holder changes its previous acceptance or rejection.

### 3.    Modification After Substantial Consummation.

If the Plan has been confirmed under Section 1191(b), Debtor may modify the Plan upon a showing the circumstances warrant such a modification and after a notice and hearing.

### Exemption from Transfer Taxes

Pursuant to Section 1146(c) of the Bankruptcy Code, the Confirmation Order, and any sale orders entered in the Bankruptcy Case, the transfer or making or delivery of any instrument

whatsoever in furtherance of or in connection with the Plan, including, without limitation, any transfer of the Assets, subsequent transfers to creditors or purchaser(s), and any assignments, documents, instruments, and agreements and other conveyance documents executed and delivered by the Reorganized Debtor in connection with the sale of the Assets in furtherance of the implementation of the Plan or otherwise shall not be subject to any stamp, real estate transfer, personal property, recording, or other similar tax. Any conveyance of real property made as provided under this Plan or in furtherance of this plan shall include the notation: "*This instrument is exempt from Transfer Taxes by virtue of 11 U.S.C. § 1146(c)*."

### Events of Default

Unless otherwise specifically provided in a class under the Plan, in the event of a default by the Reorganized Debtor in payments under the Plan or otherwise to the Holder of an Allowed Claim, the Holder must send written notice ("**Default Notice**") to the Reorganized Debtor at the address for the Reorganized Debtor listed in this Plan unless the Reorganized Debtor has provided the Holder with a written notice of a change of address. Such Default Notice must state the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default, as well as notice that the Reorganized Debtor has twenty-one (21) business days (in the case of a monetary default) and thirty (30) business days (in the case of a non-monetary default) from receipt by the Reorganized Debtor and its counsel of the Default Notice to cure such default (and the address for payment, which will accept overnight deliveries, in the event of a monetary default). The Holder must send such Default Notice to the Reorganized Debtor via certified mail or recognized overnight carrier with a copy via email or fax and by certified mail or recognized overnight carrier to G. Daniel Taylor and R. Braden Copeland (Stone & Baxter, LLP) at the address reflected in this Plan. In the event that the Plan is confirmed under Section 1191(b) and the Subchapter V Trustee's appointment has not been terminated, the Holder must also provide a copy of the Default Notice to the Subchapter V Trustee at the address reflected in this Plan or on the docket for the Bankruptcy Case. The Reorganized Debtor shall have twenty-one (21) business days or thirty (30) business days (as applicable) from the Reorganized Debtor's and its counsel's receipt of the Default Notice to cure such default. Receipt by the Reorganized Debtor's counsel or the Subchapter V Trustee, alone, shall not be deemed receipt by the Reorganized Debtor of the required Default Notice. Notwithstanding anything to the contrary in the Plan or otherwise, a default under one Class of Claims or sub-class of Claims shall not constitute a default under any other Class of Claims or sub-class of Claims.

### Remedies Upon Default

Any uncured "default," as defined above in the Events of Default subsection of this Plan, shall entitle the Holders of Allowed Claims affected thereby to (i) pursue the remedies provided under the Bankruptcy Code (including, without limitation, the right to move to dismiss the Bankruptcy Case and/or move to convert the Bankruptcy Case to a case under Chapter 7); (ii) pursue the remedies provided under any instrument executed and delivered in furtherance of this Plan; (iii) pursue the remedies provided under applicable non-bankruptcy law (including, without limitation, law applicable for any liens that are retained for the creditor against whom a Reorganized Debtor has allegedly defaulted and law applicable to the United States); and (iv) initiate a collection action, in law or in equity, to enforce against the Reorganized Debtor who

has allegedly defaulted that Reorganized Debtor's obligations under the Plan. Any suit in law or equity may be brought only in either the Bankruptcy Court or in any court of competent jurisdiction in Lowndes County, Georgia. Such remedies are consistent and compliant with Section 1191(c)(3).

### Final Decree

Any Final Decree or Final Decrees shall be sought and entered only in accordance with the Bankruptcy Code.

### Effectuating Documents and Further Transactions

The Debtor, the Reorganized Debtor, and all Holders of Allowed Claims receiving distributions under this Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

### Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order and the Confirmation Order shall continue to be in effect. The filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by Debtor or the Reorganized Debtor, as the case may be, shall not be and shall not be deemed to be an admission or waiver of any rights of Debtor or the Reorganized Debtor with respect to the holders of Claims or otherwise.

### Successors and Assigns

The rights, benefits, and obligations of any Person or Entity named or referenced in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such Entities.

### Governing Law

Except to the extent that the Bankruptcy Code is applicable or preempts state law, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of Georgia.

### Notices

Unless a recipient of a notice required under this Plan has consented to receive such notice electronically, all notices, requests, or other communications, required or permitted to be made in accordance with this Plan, including any change of address of any Person for the purpose of receiving distributions, shall be in writing and shall be delivered (a) personally, (b) by facsimile or email (confirmed by first class mail or express mail), or (c) mailed by first class mail.

Any such notice shall be deemed to have been given when received or, if mailed by first class mail, seven days after the date of mailing, postage prepaid, or, if express mailed, the next business day after the date of mailing, or if sent by facsimile or email, upon confirmation of receipt by the recipient; provided, however, that a proper notice of change of address will be effective for a distribution if received at least 30 days in advance of such distribution date.

Notices should be addressed as follows:

If to the Debtor or the Reorganized Debtor:

> Perfectly Priscilla, LLC
> c/o Mr. Thomas Thompson, President
> 1418 Harbin Circle
> Valdosta, Georgia 31601
>
> With a copy to:
>
> Stone & Baxter, LLP
> 577 Third Street
> Macon, Georgia 31201
> (478) 750-9898; (478) 750-9899 (fax)
> Attn: G. Daniel Taylor
> dtaylor@stoneandbaxter.com

If to the Subchapter V Trustee:

> Ms. Jenny Martin Walker
> Adams, Hemingway, Wilson & Rutledge, LLC
> P.O. Box 1956
> Macon, Georgia 31202
> trustee.jmw@adamshemingway.com

If to any Holder of an Administrative Claim, a Priority Tax Claim, or a Claim of any Class, at their last known address set forth on a Proof of Claim or on the Schedules if no Proof of Claim has been filed.

If to any other Persons entitled to notice, at the respective addresses that such Persons entitled to notice have provided to the Reorganized Debtor.

Any party may change the address at which it is to receive notices under the Plan by furnishing written notice pursuant to these notice provisions to the Entity to be charged with knowledge of such changes.

**Conflicts**

To the extent that any provision of any documents executed in connection with the Confirmation Order (or any exhibits, schedules, appendices, supplements or amendments to the

foregoing) conflicts with or is in any way inconsistent with the terms of this Plan, the terms and provisions of this Plan shall govern and control.

### Severability

If, following Confirmation of this Plan, any provision of this Plan is determined to be unenforceable in whole or in part, either facially or as applied, such determination shall in no way limit or affect the enforceability or operative effect of any other provision of the Plan or require the re-solicitation of any acceptance or rejection of the Plan, unless, in the absence of such provision, this Plan would fail of its essential purpose, as determined by the Bankruptcy Court.

## XVI.  ALTERNATIVES TO CONFIRMATION/CONSUMMATION OF THE PLAN

If the Plan is not confirmed and consummated, then the alternatives include (1) liquidation of the Debtor under Chapter 7 of the Bankruptcy Code, or (2) conversion or dismissal of the Debtor's Bankruptcy Cases. The Debtor believes that if the Plan is not confirmed, then holders of Allowed Claims could receive a smaller dividend than proposed under the Plan or receive such dividend at a later date than proposed in the Plan.

### Conversion to and Liquidation under Chapter 7 before Confirmation

If no plan can be confirmed, then the Case may be converted to case under Chapter 7 of the Bankruptcy Code. As explained above, the liquidation of the Debtor's assets could result in distressed or delayed recoveries and could therefore reduce the recovery to all creditors. The Debtor also believes that the conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code and the appointment of a Chapter 7 trustee would increase the costs of administration and reduce and postpone any distribution to holders of Allowed Claims. A liquidation analysis is attached to this Plan as Exhibit A.

For all of the foregoing reasons, the Debtor has concluded that Creditors are likely to receive an amount under the Plan that is greater and more quickly paid than the amount that such Creditors would receive in a Chapter 7 liquidation.

### Conversion to Chapter 7 after Confirmation

If this Case is converted to a case under Chapter 7 of the Bankruptcy Code after Confirmation, then all of the Debtor's legal or equitable interests, as of the date of conversion, in property that would have been property of the Estate had the property of the Estate not vested in the Debtor by virtue of Confirmation of the Plan, shall be property of the Estate for purposes of the Chapter 7 cases, notwithstanding the vesting of the property of the Estate in the Debtor that otherwise arises upon Confirmation of the Plan; and, by way of illustration and not limitation, such property shall include all proceeds held by the Debtor, on the date of conversion, of property that was property of the Estate prior to Confirmation of the Plan.

## XVII.  SOLICITATION

This Plan is submitted by the Debtor in compliance with its obligations under the Bankruptcy Code to provide "adequate information" to enable you to reach an informed decision regarding whether it is in your best interest to vote to accept the Plan.

## XVIII. RECOMMENDATIONS BY THE DEBTOR

**The Debtor urges all Holders of Claims and Interests to carefully consider this Plan and vote to accept the Plan by completing and submitting the enclosed Ballot. Thank You.**

*[Continued on Next Page]*

IN WITNESS WHEREOF, the undersigned have caused this Plan to be duly executed as of the date written below, which execution may be in multiple identical counterparts.

Dated this the 6th day of September, 2023.

**PERFECTLY PRISCILLA, LLC**
By

*/s/ Thomas Thompson*
Thomas Thompson, President

**STONE & BAXTER, LLP**
By:

*/s/ G. Daniel Taylor*
G. Daniel Taylor
Georgia Bar No. 528521
R. Braden Copeland
Georgia Bar No. 821153

*Counsel for Debtor*

577 Third Street
Macon, Georgia 31201
(478) 750-9898; (478) 750-9899 (fax)
dtaylor@stoneandbaxter.com
bcopeland@stoneandbaxter.com

As used in Plan, capitalized terms have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1     "Administrative Claim" means Post-Petition Obligations evidencing a right to payment for costs and expenses of administration allowed under Sections 507(a) and 503(b) and otherwise under the Bankruptcy Code, including, but not limited to: (a) Fee Claims including reimbursement of expenses awarded or allowed under Sections 330(a) or 331 of the Bankruptcy Code or otherwise arising under this Plan; (b) plan expenses and the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the business of Debtor; (c) Cure Costs; (d) payroll obligations; and (e) all fees and charges assessed against the Debtor's Estate under Chapter 123 of Title 28 of the United States Code, 28 U.S.C. Sections 1911-1930. Except as otherwise provided herein, Administrative Claims must be allowed by Order of the Bankruptcy Court.

1.2     "Administrative Claim Bar Date" means the date set forth in an Order of the Bankruptcy Court, to be entered at the time of, or as a provision of the Confirmation Order, setting a Bar Date for the filing of requests for allowance of Claims for Administrative Expenses to which such Bar Date is applicable under the terms of this Plan.

1.3     "Administrative Claim Bar Order" means an Order of the Bankruptcy Court, to be entered at the time of, or as a provision of the Confirmation Order, setting the bar date for filing requests for the allowance of Administrative Claims.

1.4     "Affiliate" shall have the meaning set forth in Section 101(2) of the Bankruptcy Code.

1.5     "Allowed Claim" means:

        (a)     a Claim that has been listed by a Debtor on the Debtor's Schedules, as filed or as subsequently amended, as other than disputed, contingent, or unliquidated, to the extent that it is not otherwise a Disputed Claim;

        (b)     a Claim for which a Proof of Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law, to the extent that it is not otherwise a Disputed Claim; or

        (c)     a Claim that is allowed: (i) in any Stipulation of Amount and Nature of Claim executed by Debtor or the Reorganized Debtor, as applicable, and Creditor; (ii) in any contract, instrument, or other agreement entered into in

connection with the Plan; (iii) in a Final Order; or (iv) pursuant to the terms of the Plan.

      (d)    Notwithstanding any other provision of this Plan, no Allowed Claim may include any claim for statutory attorneys' fees under O.C.G.A. § 13-1-11, unless allowed by order of the Bankruptcy Court, which becomes final with no appeal pending.

1.6    "<u>Allowed . . . Claim</u>" means an Allowed Claim in the particular Class or category specified.

1.7    "<u>Allowed Priority Tax Claim</u>" means an Allowed Claim that is a Priority Tax Claim, except that such claim shall not include any interest or penalty accruing after the Petition Date, except as specifically provided for in the Plan.

1.8    "<u>Allowed Secured Claim</u>" means the amount of each Allowed Claim against the Debtor that is equal to: (a) the amount stipulated as constituting the Allowed Secured Claim between Debtor and the holder of such claim, (b) the amount found to constitute such Allowed Secured Claim by the Bankruptcy Court, or (c) the lesser of (i) the total amount of indebtedness owed to the holder of such claim and (ii) the value of any property of the Estate or proceeds thereof with respect to which such creditor held a security interest or judgment lien properly perfected under the laws of the applicable jurisdiction on the Petition Date, and on the Effective Date to the extent provided under 11 U.S.C. § 506, provided that a Proof of Claim is timely-filed.

1.9    "<u>Allowed Unsecured Claim</u>" means an Allowed Claim that is an Unsecured Claim.

1.10    "<u>Asset(s)</u>" mean all property of the Debtor and the Estate and all Causes of Action of the Debtor and the Estate, all of which shall be deemed to be retained and preserved for enforcement and under the custody and control of the Estate and Debtor, as applicable, through the Reorganized Debtor, as the authorized representative of Debtor and the Estate, and administered by the Reorganized Debtor as of the Effective Date, as further set forth herein.

1.11    "<u>Ballot</u>" means a ballot filed in the Bankruptcy Case within the time set by the Court for filing such Ballots accepting or rejecting this Plan.

1.12    "<u>Balloting Report</u>" means a report of all valid ballots filed by the Debtor prior to the Confirmation of this Plan, as required by the Local Rules of the Bankruptcy Court.

1.13    "<u>Bankruptcy Case</u>" means the bankruptcy case filed in the United States Bankruptcy Court for the Middle District of Georgia, Valdosta Division by the Debtor under Chapter 11 of the Bankruptcy Code captioned Perfectly Priscilla, LLC (Chapter 11 Case No. 23-70575-JTL).

1.14    "<u>Bankruptcy Causes of Action</u>" means all causes of action available to Debtor as Debtor-in-Possession in the Bankruptcy Case, including, but not limited to, objections to the

allowance of Claims and all other Claims, actions, avoiding powers, rights of recovery, subordination rights, or other actions against Insiders and/or any other Persons or Entities under the Bankruptcy Code, including Sections 505, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code or any other applicable fraudulent conveyance, fraudulent transfer, or preference or otherwise under the Bankruptcy Code, or otherwise arising in law, equity, or admiralty, and maintainable by the Debtor-in-Possession and the Reorganized Debtor for the recovery of money or property, seeking modification, disallowance, re-characterization, or equitable subordination of Claims, or other relief.

1.15    "Bankruptcy Code" or "Code" means Title 11 of the United States Code.

1.16    "Bankruptcy Court" means the United States Bankruptcy Court for the Middle District of Georgia, Valdosta Division.

1.17    "Bankruptcy Rules" or "Rules" means, collectively, the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, as now in effect with respect to the Bankruptcy Case.

1.18    "Bar Date" means the applicable bar date by which a Proof of Claim, proof of Interest, Ballot, or Notice must be or must have been Filed, as established by an order of the Bankruptcy Court, Bankruptcy Code, or Bankruptcy Rules, including the Bar Date Order and the Confirmation Order.

1.19    "Bar Date Order" means, as applicable, the Confirmation Order or the Order or Notice Establishing Bar Dates for Filing Proofs of Claims, proofs of Interests, Ballots, or Notices, entered by the Bankruptcy Court, as the same may have been or may be amended, modified, or supplemented.

1.20    "Cash" means cash, cash equivalents and other readily marketable securities or instruments, including, without limitation, direct obligations of the United States of America and certificates of deposit issued by federally-insured banks.

1.21    "Causes of Action" includes all Claims, actions, choses in action, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and cross claims, or any other claims whatsoever of Debtor and/or the Estate that are or may be pending on the Effective Date or instituted by the Debtor or the Reorganized Debtor, either before or after the Effective Date against any Person or Entity, including, without limitation, Bankruptcy Causes of Action or Claims against Affiliates, whether  under the Bankruptcy Code, or otherwise, whether direct, indirect, derivative, or otherwise, and whether asserted or unasserted, known or unknown, suspected or unsuspected, whenever arising, whether prior to, on, or after the Effective Date, and of any character or kind whatsoever, whether based in contract, in tort, or otherwise, at law or in equity or under any other theory of law, including, but not limited to, (a) those actions generally or specifically retained or discussed in this Plan; (b) Bankruptcy Causes of Action; (c) Commercial Tort Claims; (d) rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches

of duties imposed by law; (e) the right to object to Claims or interests; (f) claims pursuant to Section 362 of the Bankruptcy Code; (g) such claims and defenses as fraud, mistake, duress, usury; and (h) any other theory, without limitation and all other claims arising out of or related to any of the foregoing or discovered during or as a consequence of the pursuit of any of the foregoing. As used in the Plan, Causes of Action is intended to have the broadest possible meaning to ensure the ability of Debtor or the Reorganized Debtor to pursue any available action supported in fact, in law, in equity, in admiralty, or otherwise, and none of the specific examples provided herein shall be construed as limiting the scope or meaning of such term.

1.22    "Claim" means "the term claim," as defined in Section 101(5) of the Bankruptcy Code, against Debtor or in favor of Debtor or the Estate against third parties.

1.23    "Claims against Affiliates" include all Causes of Action available to Debtor as Debtor-in-possession in the Bankruptcy Case against Affiliates or Insiders, including, but not limited to, all Claims, actions, avoiding powers, rights of recovery, subordination or re-characterization rights or other actions against Insiders or Affiliates under the Bankruptcy Code, including Sections 505, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code or any other applicable fraudulent conveyance, fraudulent transfer, or preference statute, rule, regulation, or ordinance or otherwise under the Bankruptcy Code or otherwise arising in law, equity, or admiralty, and maintainable for the recovery of money or property, seeking modification, disallowance, re-characterization, or equitable subordination of Claims, or other relief.

1.24    "Claims Objection Bar Date" means the latest of: (a) 120 days after the Effective Date; (b) 90 days after the Filing of a Proof of Claim for a particular Claim; (c) such other period of limitation as may be specifically fixed by the Plan, the Confirmation Order, the Bankruptcy Rules, or a Final Order for objecting to the applicable Claim; and (d) such later date as provided for by order of the Bankruptcy Court, which order may be entered without further notice.

1.25    "Class" means a class of Claims or Interests as set out in this Plan.

1.26    "Collateral" means any property of the Debtor that is subject to a valid and enforceable lien to secure a Claim.

1.27    "Commercial Tort Claims" means any tort claim of Debtor arising in connection with Debtor's operations, acquisition of assets, or otherwise including, but not limited to, claims for professional malpractice, director or officer Liability, trespass to real or personal property, negligent construction, interference with existing or prospective contractual rights or relationships, or violations of the bankruptcy automatic stay.

1.28    "Confirmation" means the entry of the Confirmation Order on the docket of the Bankruptcy Court within the meaning of Bankruptcy Rules 5003 and 9021.

1.29    "Confirmation Date" means the date of Confirmation.

1.30 "Confirmation Hearing" means the hearing held by the Bankruptcy Court on Confirmation of the Plan, as such hearing may be continued from time to time.

1.31 "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan.

1.32 "Creditor" means any Person that is the Holder of a Claim against the Debtor.

1.33 "Cure Costs" means such amount as may be found by the Bankruptcy Court to be due to the Holder of an Executory Contract in order to assume an Executory Contract in accordance with 11 U.S.C. § 365.

1.34 "Debtor" means Perfectly Priscilla, LLC, Debtor and Debtor-in-Possession in this Bankruptcy Case.

1.35 "Designated Notice" means notice and an opportunity for a hearing as described in Section 102(a) of the Bankruptcy Code. Following entry of the Confirmation Order, the time for the giving of any notices shall be reduce to fourteen (14) days, and notice shall be limited to the Notice Parties. When a party gives Designated Notice and no written objection is served within fourteen (14) days of service, the party whom Designated Notice is given shall be presumed to have consented to or have no opposition to the relief or request identified in the Designated Notice. If a timely objection is served, then Court will hold a hearing on the objection on no less than seven (7) days' notice. Notwithstanding anything in this provision to the contrary, for the first twenty-one (21) days after the Confirmation Date, Designated Notice shall include all parties in interest entitled to notice pursuant to Bankruptcy Rule 2002(i).

1.36 "Disposable Income" has the meaning ascribed to it in Section 1191(d) of the Bankruptcy Code:

1.37 "Disposition" means any sale, conveyance, transfer, assignment, liquidation, or abandonment of any Assets by the Reorganized Debtor.

1.38 "Disputed Claim" means:

(a) if no Proof of Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law, a Claim that is listed on the Debtor's Schedules as other than disputed, contingent, or unliquidated, but as to which the Debtor, the Reorganized Debtor, or any other party in interest has Filed an objection by the Claims Objection Bar Date; or

(b) if a Proof of Claim or request for payment of an Administrative Claim has been Filed by the Bar Date or has otherwise been deemed timely Filed under applicable law, a Claim for which an objection has been Filed by Debtor, the Reorganized Debtor or any other party in interest, as the case may be, by the Claims Objection Bar Date, if such objection has not been withdrawn or denied by a Final Order.

1.39 "Disputed Claims Reserve" means the interest-bearing account to be established and maintained by the Reorganized Debtor to reserve for all Disputed Claims, as further provided in the Plan, provided that claims for Statutory Attorneys' Fees shall not be considered Allowed Claims for any purpose under this Plan and no escrow shall be provided hereunder with respect to any such claim.

1.40 "Effective Date" means the day that is 60 days after the Confirmation Date and on which no stay of the Confirmation Order is in effect; provided, however, that, without complying with any provisions of the Code governing Plan modifications, following Confirmation, the Debtor may, on one occasion choose, an earlier Effective Date or extend the Effective Date for a period of no more than ninety (90) days, provided that the Debtor dockets such notice in the Bankruptcy Court and serves such notice on all creditors and parties-in-interest.

1.41 "Entity" shall have the meaning set forth in Section 101 of the Bankruptcy Code.

1.42 "Equity Interest" means the rights of Mr. Thompson or Ms. Thompson in their real, personal, tangible, or intangible properties, including, without limitation, their ownership interests in Perfectly Priscilla, LLC.

1.43 "Equity Interest Holder" means the holder of an Equity Interest.

1.44 "Estimated Claim" means any Claim, the amount of which has been estimated by the Bankruptcy Court pursuant to 11 U.S.C. § 502(c). No distribution shall be made on account of an Estimated Claim under this Plan until the Bankruptcy Court has determined the actual amount of the Claim. Until such time, all Estimated Claims shall be treated as Disputed Claims under this Plan.

1.45 "Estate" means the Estate created for the Debtor in the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

1.46 "Executory Contract" means a contract between or among any Debtor and a third party under which all parties owed continuing obligations of performance on the Petition Date as defined under case law interpreting Section 365 of the Bankruptcy Code, notwithstanding O.C.G.A. § 13-1-2.

1.47 "Fee Claim" means a Claim under Sections 330(a), 331, 503, or 1103 of the Bankruptcy Code for compensation of a Professional or other Entity for services rendered or expenses incurred in the Bankruptcy Case from the Petition Date through the Confirmation Date.

1.48 "File," "Filed," or "Filing" means file, filed, or filing with the Bankruptcy Court in the Bankruptcy Case.

1.49 "Final Decree" means a final decree as described in Bankruptcy Rule 3022.

1.50 "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Bankruptcy Case or the docket of any

other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari has expired.

1.51 "GAAP" means United States generally accepted accounting principles, consistently applied, as in effect on the Effective Date of this Plan.

1.52 "Governmental Entity" means any federal, state, or local or foreign government; any political subdivision thereof; any court, administrative or regulatory agency, department, instrumentality, body, or commission, or other governmental authority or agency, domestic or foreign.

1.53 "IRC" means the United States Internal Revenue Code of 1986, as amended.

1.54 "IRS" means the Internal Revenue Services agency of the United States.

1.55 "Insider" shall have the meaning set forth in Section 101 of the Bankruptcy Code.

1.56 "Insurance Claim" means any claim of the Debtor under any Insurance Contract covering the Debtor or any interest of the Debtor in property, arising prior to or following the Effective Date of this Plan, including claims of the Debtor against third parties to the extent covered by the Debtor's insurance.

1.57 "Insurance Contract" means any contract of insurance to which Debtor was a party on the Petition Date or on any date thereafter until the Effective Date of this Plan, or thereafter for the term of the Insurance Contract.

1.58 "Non-Tax Priority Claims" means any Claim that is entitled to priority in payment pursuant to Section 507(a)(3), (4), (5) or (6) of the Bankruptcy Code and that is not a Priority Tax Claim, Administrative Claim, or a Secured Claim.

1.59 "Notice Parties" means (i) with respect to notices served by the Debtor, the U.S. Trustee, the Subchapter V Trustee, and all other parties in interest who, after entry of the Confirmation Order, have filed a request for notice with the Clerk of the Court and have served the same on Debtor's counsel; or (ii) with respect to notices served by a party other than the Debtor, the Debtor and its counsel, the U.S. Trustee, the Subchapter V Trustee, and all parties in interest who, after entry of the Confirmation Order, have filed a request for notice with the Clerk of the Court and have served the same on the Debtor's counsel.

1.60 "O.C.G.A." means the Official Code of Georgia Annotated, as amended.

1.61 "Person" means a natural person, or any legal entity or organization including, without limitation, any corporation, partnership (general or limited), limited liability company, business trust, unincorporated organization or association, joint stock company, trust, association, governmental body (or any agency, instrumentality or political subdivision thereof), or any other form of legal entity.

1.62　"Petition Date" means June 9, 2023.

1.63　"Plan" means this plan of reorganization for the Debtor and all exhibits and schedules attached hereto or referenced herein, which exhibits shall be part of the Plan as if set forth fully herein, as any of the same may be amended, modified, or supplemented.

1.64　"Plan Interest." [Intentionally Blank.]

1.65　"Post-Petition Obligations" means, with respect to accounts payable or other obligations of Debtor, such accounts or obligations which have arisen in the ordinary course of business of Debtor, or are otherwise granted Administrative Claim status under the Plan, after the date of the filing of the Bankruptcy Cases and before Confirmation of this Plan, exclusive of interest accruals on account of Pre-petition Obligations of the Debtor.

1.66　"Pre-Petition" means prior to June 9, 2023, the date of the filing of the voluntary petition under Chapter 11 by the Debtor.

1.67　"Pre-petition Obligations" means all obligations of the Debtor arising Pre-Petition.

1.68　"Priority Tax Claim" means a Claim that is entitled to priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code.

1.69　"Pro Rata" means, when used with reference to a distribution to Holders of Allowed Claims, that the gross amounts to be paid will be divided and paid proportionately, so that with respect to a particular Allowed Claim, the ratio of (a)(i) the amount of property distributed on account of such Claim to (ii) the Allowed Amount of such Claim, is the same as the ratio of (b)(i) the amount of property distributed on account of all Allowed Claims of the Class in which such Claim is included to (ii) the amount of all Allowed Claims in that Class.  In determining such ratio, the Reorganized Debtor shall not include interest otherwise accruing upon such Claim after the Effective Date, may round percentages to the nearest $1/100^{th}$ (.01), and may round each resulting claim to the nearest one dollar ($1.00).

1.70　"Professional" means any professional employed in the Bankruptcy Case pursuant to Sections 327 or 1103 of the Bankruptcy Code or any professional or other Entity seeking compensation or reimbursement of expenses in connection with the Bankruptcy Case pursuant to Section 503(b)(4) of the Bankruptcy Code.

1.71　"Proof of Claim" means a writing complying in all respects with Bankruptcy Rule 3001, and filed in compliance with Bankruptcy Rule 3003, within the time provided by any Bar Date Order entered in the Bankruptcy Case, or any other Order specifically applicable to such writing.

1.72　"Reorganized Debtor(s)" means the Debtor following the Confirmation of this Plan.

1.73    "Schedules" mean the schedules of assets and liabilities and the statements of financial affairs Filed by Debtor, as required by Section 521 of the Bankruptcy Code and the official bankruptcy forms, as the same may have been or may hereafter be amended, modified, or supplemented by Debtor or the Reorganized Debtor, as the case may be.

1.74    "Secured Claim" means a Claim that is secured by a lien on property in which the Estate has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the Holder's interest in the Estate's interest in such property, or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Sections 506(a), and if applicable, Section 1129(b) of the Bankruptcy Code.

1.75    "Set-off Claims" means all setoff claims to the extent allowed under Section 553 of the Bankruptcy Code.

1.76    "Special Notice Parties" means the United States Trustee, the Subchapter V Trustee, and the parties on the Reorganized Debtor's mailing matrix which Reorganized Debtor may shorten as necessary post-Confirmation provided that such shortened mailing matrix is approved by the Bankruptcy Court, and any other parties that have requested in writing a relevant special notice from the Reorganized Debtor.

1.77    "Statutory Attorney Fees" shall mean the portion of any Claim constituting Pre-Petition attorney fees charged against the Debtor under O.C.G.A. § 13-1-11.

1.78    "Statutory Interest" shall mean, unless the Bankruptcy Court determines otherwise at the Confirmation Hearing, for all Holders who are entitled to interest under 11 U.S.C. § 511, including the Holder of an Allowed Priority Tax Claim who is entitled to interest under U.S.C. § 511, the rate of interest charged by such Holders under non-bankruptcy state or federal law as of the Confirmation Date.

1.79    "Stipulation of Amount and Nature of Claim" means a stipulation or other agreement between the Debtor or the Reorganized Debtor and a Creditor, or an agreed order of the Bankruptcy Court, establishing the amount and nature of a Claim.

1.80    "Sub V Trustee" or "Subchapter V Trustee" means the Subchapter V Trustee, Jenny Martin Walker, or any successor to Jenny Martin Walker, appointed by the United States Trustee under Section 1183(a) of the Bankruptcy Code to serve as the Subchapter V Trustee in this Bankruptcy Case.

1.81    "Total Class 4 Distribution" or "Class 4 Total Distribution" means the sum total of Disposable Income that is projected on the Budget for the Reorganized Debtor, an amount that the Reorganized Debtor is authorized to prepay without penalty, in full satisfaction of its Class 4 obligations.

1.82    "Uniform Commercial Code" means the Uniform Commercial Code suggested by the Commission of Uniform State Laws, as enacted and in force in the State of Georgia.

1.83    "<u>Unsecured Claim</u>" means any Claim allowed under 11 U.S.C. § 502 that is not an Administrative Claim, Non-Tax Priority Claim, Priority Tax Claim, Secured Claim, or an Interest.

1.84    "<u>Voting Deadline</u>" means the deadline set by the Court for receipt of Ballots respecting this Plan.


**[END OF DEFINED TERMS]**


G:\CLIENTS\Perfectly Priscilla, LLC\Plan\Draft Documents\BC Work Folder\01 - PPL - Subchapter V Plan (Draft to Client).docx

## EXHIBITS AND SCHEDULES

**Exhibit A: Liquidation Analysis**

**Exhibit B: Budget**

**Schedule 1: Definitions (see above)**

**Schedule 2: Claims**

**Schedule 3: Potential Avoidance Actions (to be added by amendment if necessary)\*\***

# EXHIBIT A

# Liquidation Analysis

**EXHIBIT A**
**PERFECTLY PRISCILLA LIQUIDATION ANALYSIS**
**(Bankr. M.D. Ga. 23-70575)**

| ASSETS OF PPL | SCHEDULED FMV | LIQ. FACTOR | LIQ. VALUE (a) | SALES COMM. | CH.7 COSTS (b) | SECURED CLAIMS (d) | GROSS DIST. =(a)-(b)-(c)-(d) |
|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents | $10,000.00 | 100% | $10,000.00 | 0% | $0.00 | | $10,000.00 |
| Deposits and Prepayments | $0.00 | n/a | n/a | n/a | n/a | | $0.00 |
| Accounts Receivable | $0.00 | n/a | n/a | n/a | n/a | | $0.00 |
| Inventory | $333,897.09 | 50% | $166,948.55 | 6% | $10,016.91 | $ 880,369.28 | $0.00 |
| Office Furniture, Fixtures, Equipment | $25,075.00 | 25% | $6,268.75 | 6% | $376.13 | $ 880,369.28 | $0.00 |
| Avoidance Actions | $0.00 | n/a | n/a | n/a | n/a | | $0.00 |
| | | | | | | | |
| | | | | | | | |
| **Total** | **$368,972.09** | | **$183,217.30** | | **$10,393.04** | **$1,760,738.56** | **$10,000.00** |

| | |
|---|---|
| Less: Ch. 7 Trustee Comm. | ($12,410.86) |
| Less: Ch. 7 Trustee Atty Fees | ($5,000.00) |
| Less: Sub V Trustee Fees | ($5,000.00) |
| Less: Ch. 11 Admin. Exp. | ($25,000.00) |
| Less: Priority Claims** | $ (72,434.80) |
| **Net Liquidation Value** | **($109,845.66)** |
| **Resulting % to Unsecureds** | |
| **Under Ch. 7** | **0.00%** |
| **Under Plan** | **1.08%** |

**Assumptions**

1. Trustee abandons properties w/ no equity
2. If Trustee abandons, then no Ch. 7 collection costs or Ch. 7 commission.
3. If Trustee abandons, then no secured distribution by Trustee.
4. Admin claims are paid prior to liquidation.
5. Priority Tax Claims of IRS and Ga DOR would be paid prior to unsecureds.
6. Trustee will use cash on hand and receivables to cover then due operating expenses.
7. Admin Claims include professional fees.

| Calculation of Unsecured Claims | Amt. |
|---|---|
| Est. Allowed Uns. Claims (See Sch. 2) | $ 3,130,461.96 |
| Est. Uns. Distribution (See Budget) | $33,832.04 |

# EXHIBIT B

# Budget

## EXHIBIT B
## PPL 5-YEAR BUDGET
### (Bankr. M.D. Ga. 23-70575)

| Cash and Income | Jan-24 | Feb-24 | Mar-24 | Apr-24 | May-24 | Jun-24 | Jul-24 | Aug-24 | Sep-24 | Oct-24 | Nov-24 | Dec-24 | 1-12 Mos. | 13-24 Mos. | 25-36 Mos. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *Beginning Cash Balance (Estimate)* | $10,000 | $770 | $12,540 | $24,310 | $36,830 | $39,350 | $41,871 | $34,891 | $24,161 | $28,431 | $32,701 | $24,971 | $10,000 | $18,241 | $21,886 |
| Sales | $180,000 | $190,000 | $190,000 | $190,000 | $180,000 | $180,000 | $180,000 | $165,000 | $180,000 | $180,000 | $180,000 | $180,000 | $2,175,000 | $2,229,375 | $2,285,109 |
| | | | | | | | | | | | | | | | |
| **Total Income** | $180,000 | $190,000 | $190,000 | $190,000 | $180,000 | $180,000 | $180,000 | $165,000 | $180,000 | $180,000 | $180,000 | $180,000 | $2,175,000 | $2,229,375 | $2,285,109 |
| **Operating Expenses** | | | | | | | | | | | | | | | |
| Bank Charges | $800 | $800 | $800 | $800 | $800 | $800 | $800 | $800 | $800 | $800 | $800 | $800 | $9,600 | $9,888 | $10,135 |
| Digital Marketing | $30,000 | $20,000 | $20,000 | $20,000 | $20,000 | $20,000 | $30,000 | $20,000 | $20,000 | $20,000 | $30,000 | $29,000 | $279,000 | $292,950 | $300,274 |
| Email Marketing | $5,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $6,000 | $5,000 | $5,000 | $5,000 | $6,000 | $6,000 | $58,000 | $59,740 | $61,234 |
| SMS Marketing | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $5,000 | $5,000 | $50,000 | $51,500 | $52,788 |
| Shopify Platform Fee | $2,900 | $2,900 | $2,900 | $2,900 | $2,900 | $2,900 | $2,900 | $2,900 | $2,900 | $2,900 | $2,900 | $2,900 | $34,800 | $35,844 | $36,740 |
| ShipHero Platform Fee | $1,300 | $1,300 | $1,300 | $1,300 | $1,300 | $1,300 | $1,300 | $1,300 | $1,300 | $1,300 | $1,300 | $1,300 | $15,600 | $16,068 | $16,470 |
| Yotpo Loyalty Program | $800 | $800 | $800 | $800 | $800 | $800 | $800 | $800 | $800 | $800 | $800 | $800 | $9,600 | $9,888 | $10,135 |
| Payroll | $29,466 | $29,466 | $29,466 | $29,466 | $29,466 | $29,466 | $29,466 | $29,466 | $29,466 | $29,466 | $29,466 | $29,466 | $353,592 | $364,200 | $373,305 |
| Payroll Taxes | $5,525 | $5,525 | $5,525 | $5,525 | $5,525 | $5,525 | $5,525 | $5,525 | $5,525 | $5,525 | $5,525 | $5,525 | $66,300 | $68,289 | $69,996 |
| Inventory | $30,000 | $30,000 | $30,000 | $30,000 | $30,000 | $30,000 | $30,000 | $30,000 | $30,000 | $30,000 | $30,000 | $30,000 | $360,000 | $370,800 | $380,070 |
| Dropship Expenses | $40,000 | $40,000 | $40,000 | $40,000 | $40,000 | $40,000 | $40,000 | $40,000 | $40,000 | $40,000 | $40,000 | $40,000 | $480,000 | $494,400 | $506,760 |
| Insurance | $266 | $266 | $266 | $266 | $266 | $266 | $266 | $266 | $266 | $266 | $266 | $266 | $3,192 | $3,288 | $3,370 |
| Workers Comp. | $472 | $472 | $472 | $472 | $472 | $472 | $472 | $472 | $472 | $472 | $472 | $472 | $5,664 | $5,834 | $5,980 |
| Office Supplies | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $24,000 | $24,720 | $25,338 |
| Shipping Costs | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $180,000 | $185,400 | $190,035 |
| Data/Internet | $335 | $335 | $335 | $335 | $335 | $335 | $335 | $335 | $335 | $335 | $335 | $335 | $4,020 | $4,141 | $4,244 |
| Electrical Service | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $24,000 | $24,720 | $25,338 |
| Warehouse Lease | $4,815 | $4,815 | $4,815 | $4,815 | $4,815 | $4,815 | $4,815 | $4,815 | $4,815 | $4,815 | $4,815 | $4,815 | $57,780 | $59,513 | $61,001 |
| Professionals | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $12,000 | $12,360 | $12,669 |
| Georgia Income Tax | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $13,200 | $13,596 | $13,936 |
| Georgia Sales Tax | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $18,000 | $18,540 | $19,004 |
| Other | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $30,000 | $30,900 | $31,673 |
| **Total Expenses** | $180,779 | $169,779 | $169,779 | $169,779 | $169,779 | $169,779 | $181,779 | $170,779 | $170,779 | $170,779 | $182,779 | $181,779 | $2,088,348 | $2,156,578 | $2,210,493 |
| **Net Cash from Operations, Incl. Beginning Cash** | $9,221 | $20,991 | $32,761 | $44,531 | $47,051 | $49,571 | $40,092 | $29,112 | $33,382 | $37,652 | $29,922 | $23,192 | $96,652 | $91,038 | $96,502 |
| **Unclassified Administrative & Priority Claims** | | | | | | | | | | | | | | | |
| Stone & Baxter | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 | $0 | $0 | $0 | $0 | $0 | $0 | $15,000 | $1,000 | $1,000 |
| Subchapter V Trustee | $1,000 | $1,000 | $1,000 | $250 | $250 | $250 | $250 | $0 | $0 | $0 | $0 | $0 | $4,000 | $500 | $500 |
| Internal Revenue Service | $1,010 | $1,010 | $1,010 | $1,010 | $1,010 | $1,010 | $1,010 | $1,010 | $1,010 | $1,010 | $1,010 | $1,010 | $12,117 | $12,117 | $12,117 |
| Georgia Department of Revenue | $558 | $558 | $558 | $558 | $558 | $558 | $558 | $558 | $558 | $558 | $558 | $558 | $6,699 | $6,699 | $6,699 |
| [Reserved] | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| [Reserved] | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| [Reserved] | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Total Admin./Priority Claims** | $5,068 | $5,068 | $5,068 | $4,318 | $4,318 | $4,318 | $1,818 | $1,568 | $1,568 | $1,568 | $1,568 | $1,568 | $37,816 | $20,316 | $20,316 |
| **Net Cash Avail. for Plan Pmts, Incl. Beginning Cash** | $4,153 | $15,923 | $27,693 | $40,213 | $42,733 | $45,253 | $38,274 | $27,544 | $31,814 | $36,084 | $28,354 | $21,624 | $58,836 | $70,722 | $76,186 |
| **Plan Payments (See Sch. 2 for Assumptions)** | | | | | | | | | | | | | | | |
| Class 2: Shopify Capital | $2,515 | $2,515 | $2,515 | $2,515 | $2,515 | $2,515 | $2,515 | $2,515 | $2,515 | $2,515 | $2,515 | $2,515 | $30,184 | $30,184 | $30,184 |
| Class 3: Small Business Administration | $868 | $868 | $868 | $868 | $868 | $868 | $868 | $868 | $868 | $868 | $868 | $868 | $10,412 | $10,412 | $10,412 |
| Class 4: General Unsecured Creditors | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Class 5: Equity Class | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Total Plan Payments** | $3,383 | $3,383 | $3,383 | $3,383 | $3,383 | $3,383 | $3,383 | $3,383 | $3,383 | $3,383 | $3,383 | $3,383 | $40,595 | $40,595 | $40,595 |
| **Net Cash, Including Beginning Cash** | $770 | $12,540 | $24,310 | $36,830 | $39,350 | $41,871 | $34,891 | $24,161 | $28,431 | $32,701 | $24,971 | $18,241 | $18,241 | $30,127 | $35,591 |

| | 1-12 Mos. | 13-24 Mos. | 25-36 Mos. |
|---|---|---|---|
| Ending Cash | $18,241 | $21,886 | $11,886 |
| Less: Class 4 - Unsecured Payment | | | |
| Disposable Income for Following Year's Unsecured Payment | $8,241 | $11,886 | $13,705 |
| Total Unsecured Distribution | | | $33,832 |

# SCHEDULE 2

## Claims

**Schedule 2**
**Perfectly Priscilla Claim Summary**
**(Bankr. M.D. Ga. 23-70575)**

| POC No. | Creditor | Status | Priority or Secured Amt | Unsecured Amt |
|---|---|---|---|---|
| 3 | Georgia Dept. of Revenue | Priority | $ 25,787.80 | |
| 11 | Internal Revenue Service | Priority | $ 46,647.00 | |
| 13 | Shopify Capital, Inc. | Secured | $ 162,659.00 | |
| | U.S. Small Business Admin. | Secured | $ 171,238.09 | $ 326,922.90 |
| 1 | Mediacom Communications | Unsecured | $ - | $ 635.30 |
| 2 | Brex, Inc. | Unsecured | $ - | $ 236,401.70 |
| 3 | Georgia Dept. of Revenue | Unsecured | $ 26,684.93 | $ 5,936.97 |
| 4 | Capital One | Unsecured | $ - | $ 336,784.88 |
| 5 | Uline | Unsecured | $ 319.22 | $ 594.54 |
| 6 | FC Market Place, LLC | Unsecured | $ - | $ 219,549.29 |
| 7 | 3970 Old Milton, LLC | Unsecured | $ - | $ 12,500.00 |
| 8 | American Express | Unsecured | | $ 197,287.22 |
| 9 | PIRS Capital, LLC | Unsecured | | $ 127,709.70 |
| 12 | Forward Financing | Unsecured | | $ 328,922.56 |
| | Paypal Working Capital, Inc. | Unsecured | | $ 112,239.34 |
| | Forward Financing | Unsecured | | $ 193,262.50 |
| | 143Story, LLC | Unsecured | | $ 51,882.45 |
| | Cirteo Corp. | Unsecured | | $ 18,511.30 |
| | Heimish Fashion | Unsecured | | $ 83,771.78 |
| | HeySon Clothing | Unsecured | | $ 11,690.00 |
| | Loan Builder | Unsecured | | $ 50,862.56 |
| | Meta Platforms, Inc. | Unsecured | | $ 559,488.32 |
| | Power Digital Marketing | Unsecured | | $ 48,500.00 |
| | Route App, Inc. | Unsecured | | $ 52,268.20 |
| | See and Be Seen | Unsecured | | $ 17,921.50 |
| | Staccato | Unsecured | | $ 60,816.00 |
| | Stodge, Inc. | Unsecured | | $ 29,197.34 |
| | Thomas Thompson | Unsecured | | $ 2,596.15 |
| | Unit Fashion, Inc. | Unsecured | | $ 36,220.50 |
| | United Parcel Service, Inc. | Unsecured | | $ 7,988.96 |
| | | | | |
| | | | | |
| | | **Total** | | $ 3,130,461.96 |